**In the Matter of the Application of Michael J. KINGSLEY for the Return of Seized Property,**

**In re Michael J. Kingsley, Petitioner (Two Cases).**

**Nos. 85–1704, 85–1744.**

United States Court of Appeals, First Circuit.

Argued Jan. 9, 1986.

Decided Sept. 30, 1986.

Linda J. Thompson with whom John M. Thompson, Springfield, Mass., was on brief, for petitioner.

Henry L. Rigali, Asst. U.S. Atty., with whom William F. Weld, U.S. Atty., Boston, Mass., was on brief, for U.S.

Before COFFIN, BOWNES and TORRU-ELLA, Circuit Judges.

BOWNES, Circuit Judge.

This case arose when the federal Drug Enforcement Administration (DEA) seized virtually all the known property of appellant Michael J. Kingsley (Kingsley) prior to instituting a civil forfeiture action. A detailed statement of the background and proceedings below is necessary to understand the issues before us on this appeal.

*Background and Proceedings Below*

On May 3, 1985, a DEA agent presented a sworn affidavit to the United States Magistrate in Springfield, Massachusetts, stating on information and belief that Kingsley was a cocaine dealer whose only income for the preceding ten years was from illegal drug sales. The agent requested that a warrant be issued for a civil forfeiture seizure under 21 U.S.C. § 881(a)(6) (1982), which provides in pertinent part:

(a) The following shall be subject to forfeiture to the United States and no property right shall exist in them:

. . . .

(6) All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a con-

trolled substance in violation of this subchapter, *all proceeds traceable to such an exchange*, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter.... [Emphasis added.]

The magistrate found the affidavit established probable cause that all of Kingsley's possessions were purchased with the proceeds of illegal drug sales and issued individual seizure warrants for Kingsley's house, its contents, his girl friend's car, her diamond ring, and several bank accounts. The DEA then seized all the property except the ring, which it was unable to locate. Pursuant to additional warrants, the DEA seized Kingsley's investment accounts on May 6 and had them converted to cash, and on May 17 it seized a New York bank account. In the words of the magistrate:

It would not be an exaggeration to say that, as a result of the seizures authorized by this court, Kingsley has lost everything. His domicile has been seized and all of his most intimate possessions meticulously examined and inventoried by the Government.

The magistrate also granted the DEA's motion to impound the affidavits filed to support its warrant applications, based on the DEA's contention that

disclosure of the contents of the affidavit would jeopardize the government's long-term investigation into illegal narcotics activity of individuals mentioned therein. In addition, disclosure would reveal the identities of government witnesses, thereby subjecting them to the risk of harm.

Neither criminal charges nor a civil forfeiture complaint had been filed at this time.

On May 6 and May 20, the DEA permitted Kingsley to enter the house and remove pets, some clothing, personal hygiene items and food. On May 8 Kingsley moved to dissolve the order impounding the affidavits, arguing that he could not challenge the legality of the seizure without examining the government's affidavits, and that the seizures were unlawful because he had

no forum in which to challenge their validity.

In the meantime Kingsley sought to determine directly from the DEA and the United States Attorney whether administrative or judicial forfeiture proceedings would be initiated. The government took the position that under 19 U.S.C. §§ 1602–18 (Supp. II 1984) it first had to conduct an inventory, which took more than a week, and then it had to appraise the property seized. 19 U.S.C. § 1606. If the house and each article of property were valued at less than $100,000 the government would then proceed under administrative forfeiture proceedings, and if any was valued at more than $100,000 it would proceed under judicial forfeiture proceedings as to that article of property. 19 U.S.C. §§ 1607, 1610. If administrative forfeiture proceedings were begun, then Kingsley could file a cost bond, which would not be more than $2,500 for each article, and the government would then be forced to initiate civil forfeiture actions in district court. 19 U.S.C. § 1608. Kingsley asserts he attempted to tender the maximum cost bond in order to avoid the need to appraise the property, and to get the proceedings into court immediately so a challenge to the seizures could be made, but the government refused to accept it until the appraisal was made.

At the May 14 hearing on Kingsley's motion before the magistrate to dissolve the impoundment order, the government argued that Kingsley had no right to any process at all before formal forfeiture proceedings were begun. It maintained that until some type of forfeiture proceeding was initiated Kingsley had no standing even to come before the magistrate to challenge the impoundment order. The government also asserted that it could have seized Kingsley's property without a warrant under 21 U.S.C. § 881(b)(4) (Supp. II 1984), and that, therefore, the validity of the impoundment of its affidavits used to procure the warrants was not an issue.

Kingsley's motion to dissolve the impoundment order was denied by the magistrate on May 23. The magistrate ruled *inter alia* that he had jurisdiction over the motion and that, even though the DEA had seized some articles under the all-inclusive warrants that would not be forfeitable under 21 U.S.C. § 881(a)(6),[1] this could be corrected by postseizure proceedings. The magistrate also held that, although the constitutionality of the seizure was a serious issue, it was not relevant to the validity of the impoundment order. On the impoundment issue, the magistrate held that the government's interest in protecting its criminal investigation outweighed Kingsley's right to see the affidavits. The magistrate noted that Kingsley could challenge the seizure by putting forward evidence of the source of the funds used to purchase the seized property whether or not he knew what representations were made in the government's affidavits.

Notice of the government's appraisal of the house and initiation of administrative forfeiture was not sent until May 22; the notice was sent to the address of the seized house, and Kingsley claims he did not receive it for some time. On May 31, the government obtained warrants to search the seized property. Another impounded affidavit was the basis of its showing of probable cause.

On June 4, Kingsley filed a motion in the district court under Rule 41(e) of the Federal Rules of Criminal Procedure, seeking return of his property, claiming it was unlawfully seized. Kingsley asserted various constitutional challenges to the government's actions. First, he challenged the use of 21 U.S.C. § 881(a)(6) *in rem* forfeiture proceedings on the ground that the forfeitability of his property as the "proceeds" of illegal drug transactions was determined by his probable guilt as a drug dealer rather than on any direct evidence of alleged unlawful procurement of the property. Second, he asserted violations of the fourth amendment, including a lack of par-

---

1. The government apparently had seized as part of the contents of the house Kingsley's high school yearbook, gifts, and childhood memorabilia.

ticularity in the seizure warrants, probable cause to issue them, unreasonable and unauthorized execution of the warrants, and violation of his right to privacy. Third, he asserted a violation of his fifth amendment right to due process because all his property had been taken without a preseizure or prompt postseizure hearing. He also asserted that 21 U.S.C. § 881 was unconstitutional because the government was in fact punishing him for a crime without a grand jury indictment and the due process protections required by the fifth amendment. The impoundment of the government's affidavits also was asserted as a due process violation since he could not effectively challenge the magistrate's findings. Fourth, Kingsley asserted that as to any property acquired before the enactment of 21 U.S.C. § 881(a)(6) in 1978, and as to property worth more than $10,000 acquired before 19 U.S.C. §§ 1607–08 was amended to permit administrative rather than judicial forfeiture of property worth less than $100,000, the seizures amounted to an *ex post facto* penalty. Finally, Kingsley claimed he was being subjected to cruel and unusual punishment in violation of the eighth amendment. An expedited hearing and disclosure of the affidavits was requested on Kingsley's motion. The district court did not immediately respond.

On June 12, Kingsley moved for the preliminary injunction seeking immediate possession and use of his personal property and residence pending resolution of his Rule 41(e) motion, and asking that the government be enjoined from removing, searching, or disposing of any of his property. In the motion Kingsley agreed to an order restraining him from disposing of the property if possession was restored to him, and agreed to give additional security required by the court.

On June 20, the United States Attorney's office filed seven separate *in rem* forfeiture complaints against Kingsley's properties.[2] The next day, June 21, a hearing

was held on Kingsley's preliminary injunction motion, by which date Kingsley had been excluded from his home and deprived of his personal property and financial resources for almost fifty days.

The district court issued a memorandum and order on July 12. *Application of Kingsley*, 614 F.Supp. 219 (D.Mass.1985). The court denied Kingsley's Federal Rule of Criminal Procedure 41(e) motion, holding that Rule 41 is not applicable in a civil forfeiture context. *Id.* at 221 n. 1. The court treated the motion for a preliminary injunction as pertaining to the government's civil forfeiture action. Although on its face it only related to the Rule 41(e) motion, and was filed before the government instituted the forfeiture action, the district court apparently understood Kingsley to agree during the hearing that consideration of the preliminary injunction motion should also focus on the government's likelihood of success in its civil forfeiture action. The court stated that it would interpret Kingsley's motion for a preliminary injunction as making two arguments for relief in the civil forfeiture action: first, that the seizure warrant violated the fourth amendment particularity requirement by authorizing seizure of the house "contents," and second, that the provisions of 21 U.S.C. § 881(a)(6) (authorizing seizure of "proceeds" of illegal drug transactions), on which the government relied for the seizure, should not apply in this case. *Id.* at 221. Before reaching these issues, the district court stated that it must also decide "several important and disturbing issues" raised by the case. *Id.* at 222.

The court held that the government had failed to follow either of the 21 U.S.C. § 881(b) seizure procedures:

(b) Any property subject to civil or criminal forfeiture to the United States under this subchapter may be seized by the Attorney General upon process issued pursuant to the Supplemental Rules for

---

**2.** Because the forfeiture proceedings are separate from this action, we do not know exactly against which properties complaints were filed.

It now appears that at least ten separate actions have been filed.

Certain Admiralty and Maritime Claims [3] by any district court of the United States having jurisdiction over the property, except that seizure without such process may be made when—

. . . .

(4) the Attorney General has probable cause to believe that the property is subject to civil or criminal forfeiture under this subchapter.

In the event of seizure pursuant to paragraph (3) or (4) of this subsection, proceedings under subsection (d) of this section [*i.e.*, civil forfeiture proceedings, 19 U.S.C. §§ 1602–18] shall be instituted promptly.

The court also held that under *United States v. Pappas*, 613 F.2d 324 (1st Cir. 1979) (en banc), if the government chooses the admiralty seizure process of § 881(b), the fourth amendment requires that a detached judicial officer also determine if there is probable cause for the seizure before a warrant may issue. Although a probable cause determination was made in this case, no civil forfeiture complaint was filed when the government sought its seizure warrant, as required under the admiralty process. The district court therefore found that this seizure did not comply with the admiralty process and was thus "warrantless" under the statute and *Pappas*. The court noted that the procedure for a warrantless seizure provided for in 21 U.S.C. § 881(b)(4) was also not complied with because the government did not show, as required by *Pappas*, that there were exigent circumstances and that probable cause had been originally determined immediately before the seizure. *Application of Kingsley*, 614 F.Supp. at 222–23. Al-

though it found the seizure illegal, the district court did not go on to decide if the property must therefore be returned. It stated that invalidating the seizure would only "delay until another day resolution of the important questions this case raises," and that the remedy for an illegal seizure of forfeitable property was not clear. *Id.* at 223. The court pointed out that it is open to question whether the proper remedy for an illegal civil forfeiture seizure is exclusion from the forfeiture proceeding of any evidence obtained, a cause of action in damages, or outright return of the property. It then stated that it did not need to answer this question since the "petitioner is entitled to relief in the form of a preliminary injunction because petitioner has shown he is likely to prevail at the forfeiture proceeding on the grounds that the government will be unable to prove probable cause under the statute to forfeit petitioner's property." *Id.* at 224.

The court then applied the four-part preliminary injunction test. As to the house, it made the following finding. "The Court agrees with the Magistrate that the affidavit provides probable cause to believe that narcotics activity is and has been for some time petitioner's sole source of income and that it is with this money that petitioner purchased his home.[8]" 614 F.Supp. at 225. In footnote 8, the court found that "the affidavit provides probable cause to believe that all of petitioner's income in the last ten years is from drugs."

As to the contents of the house, the court stated that it had difficulty tracing the alleged narcotics proceeds to the undifferentiated house contents. It found, there-

---

**3.** At the time of these seizures, Rule C of the Supplemental Rules for Certain Admiralty and Maritime Claims stated in pertinent part:

(2) *Complaint.* . . . In actions for the enforcement of forfeitures for violation of any statute of the United States the complaint shall state the place of seizure and whether it was on land or on navigable waters, and shall contain such allegations as may be required by the statute pursuant to which the action is brought.

(3) *Process.* Upon the filing of the complaint the clerk shall forthwith issue a war-

rant for the arrest of the vessel or other property that is the subject of the action and deliver it to the marshal for service. . . .

Subsection (3) was amended as of August 1, 1985, and now reads in pertinent part:

(3) *Judicial authorization and process.* . . . In actions by the United States for forfeitures for federal statutory violations, the clerk, upon filing of the complaint, shall forthwith issue a summons and warrant for the arrest of the vessel or other property without requiring a certification of exigent circumstances.

fore, that Kingsley had shown a likelihood of success on the merits. The court found that Kingsley would be irreparably harmed by being indefinitely deprived of his personal possessions and that this outweighed any harm to the government. It ordered the house contents returned to Kingsley subject to posting a bond of $25,000 to meet the requirements of Federal Rule of Civil Procedure 65(c). The court also adopted "petitioner's suggestion" and ordered Kingsley not to dispose of or encumber any of the returned property before termination of the forfeiture proceedings.

The court also stated that it believed the public interest would be harmed if the injunction were not granted. It gave its reasons as follows:

> Although the Court recognizes the seriousness of the drug trafficking problem in our society, the Court is very disturbed by the seizure that has occurred here. Petitioner has not even been indicted, yet there is every indication that the seizure of petitioner's property was a punitive gesture. At oral argument, the government kept referring to petitioner as "the defendant" and "a drug violator." Furthermore, the government purports to indefinitely divest petitioner of everything he owns even though there is no question that the seized "contents" of petitioner's residence include private papers, memorabilia and other personal possessions that are totally unrelated to narcotics activity. Such an intrusion borders on a substantive due process violation, *cf. Rochin v. California,* 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952), and the public interest demands it be redressed.

614 F.Supp. at 226. It seems clear that the court felt that the preliminary injunction was just the first phase of the proceedings before it.

The government moved to stay the district court's order; the motion was denied. Kingsley then filed notice of appeal of the

order on July 22. The government subsequently filed for reconsideration of the July 12 order, supplying an additional affidavit linking certain items in the house to drug transactions. It also moved to have the accompanying affidavit impounded, which motion was granted. Kingsley objected, arguing again that impoundment prevented him from adequately opposing the government's motions. The district court granted the motion to reconsider on August 6, and rescinded the turnover order as to some of the contents of the house, but then reversed itself and reinstated fully its July 12 order on August 29.[4] Although the probable cause finding in the July 12 order was apparently the probable cause required under the *statute,* the district court stated in its August 29 order that in the July 12 order it had held that the "government's attempted seizure of petitioner's residence and its contents pursuant to 21 U.S.C. § 881 was defective with respect to the contents because the warrant issued by the Magistrate failed to comply with the *Fourth Amendment's* dual requirements of probable cause and particularity." (Emphasis added.) Other motions continued to fly back and forth both in the district court and in this court, but are not pertinent to the issues before us.

An indictment charging narcotics violations, tax evasion and money laundering was returned against Kingsley and others on November 26, 1985. Under Count 15 of the indictment, the government seeks forfeiture of the house and contents as well as other property pursuant to 21 U.S.C. § 848 (Supp. II 1984). Kingsley and the government entered into a residency agreement on September 10, 1985, whereby Kingsley has been permitted to regain possession of his house, subject to certain restrictions, pending completion of civil and criminal forfeiture proceedings. On December 2, 1985, the district court granted the government's motion to release the affidavit impounded by the magistrate on May 3.

---

**4.** The basis for the *volte-face* was that because of the appeal taken by the petitioner to the court's preliminary injunction order, the court

was without jurisdiction to modify the injunction.

Before we get to the issues on appeal, there is a preliminary matter to consider. Kingsley has moved this court to strike the government's formerly impounded affidavit from the record, and to strike the government's supplemental appendix. He maintains that the affidavit and many of the documents in the government's appendix were not part of the record in the district court and that the district court's order making the affidavit part of the record in that court was defective. We deny both motions. Kingsley disputes whether the affidavit was part of the record before the district court. That is immaterial. It was part of the record before the magistrate, and is, therefore, now properly before us. As for the government's appendix, the only document necessary to our decision in this case is the residency agreement. We have a right to consider new evidence which makes an appeal moot. *See Matthews v. Marsh*, 755 F.2d 182, 183–84 (1st Cir.1985).

*The Appeal*

Kingsley's basic argument on appeal is that the district court erred in denying his Rule 41(e) motion on the ground it was inappropriate to a civil forfeiture seizure, and that the court should have ruled on Kingsley's probability of success on that motion to determine if an injunction should enter. Kingsley also urges us to interpret the district court's determination that Rule 41(e) does not apply to civil forfeiture as not being an outright denial of the motion, but as an erroneous conclusion that the preliminary injunction motion pertained not to the Rule 41(e) motion but to the government's civil forfeiture action.[5]

Kingsley argues that, even treating the preliminary injunction motion as pertaining to the government's civil forfeiture action

and not to the Rule 41(e) motion, the district court made several findings which supported a conclusion that he enjoyed a reasonable prospect for success "on the merits of his petition for return of seized property." Kingsley's Brief at 17. Kingsley implies that these findings also bear on the government's likelihood of success in the civil forfeiture action. The findings and statements of the district court to which Kingsley points as bearing on the likelihood of success include the following: (1) that the fourth amendment probable cause and particularity requirements are incorporated into the 21 U.S.C. § 881 seizure procedure and were violated; (2) that the government did not comply with the 21 U.S.C. § 881(b) admiralty process because it did not file a claim when seeking the warrants, or with the 21 U.S.C. § 881(b)(4) exception to the admiralty process because it did not show the exigent circumstances required in this circuit by *United States v. Pappas*, 613 F.2d 324; (3) that the Rule 41(e) motion raises interesting and unresolved fourth amendment issues; (4) that there was no probable cause to seize the undifferentiated contents of Kingsley's home, and that the government was unlikely to prevail in its forfeiture action as to these items; and (5) that the government's seizure of Kingsley's property gave "every indication" of being a "punitive gesture." It is Kingsley's position that the court abused its discretion in not ordering the house returned to him and in requiring him to post the bond. He requests "meaningful" injunctive relief from us: return of all of his property and cancellation of the bond.

What Kingsley is not appealing is significant. He has chosen not to appeal directly the denial of his Rule 41(e) motion,[6] or even

---

5. We think it clear that the district court denied the Rule 41(e) motion outright. The court stated in its memorandum and order the following:

Petitioner has also moved pursuant to Fed.R. Crim.P. 41(e) for return of seized property. However, the Court has concluded that R. 41 is not applicable in this context. The warrant required in this type of case, *see infra* at pp.

222–23, is not issued for any of the purposes listed in R. 41(b)....

*Application of Kingsley*, 614 F.Supp. at 221 n. 1.

6. The interlocutory appeal of the denial of a Rule 41(e) motion raises serious questions. *See DiBella v. United States*, 369 U.S. 121, 131, 82 S.Ct. 654, 660, 7 L.Ed.2d 614 (1962); *Angel-*

to request a remand to the district court for reconsideration of the merits of that motion. He seeks a preliminary injunction, on the grounds that he will likely succeed on the merits of the Rule 41(e) motion or in the government's civil forfeiture action.[7] We, therefore, treat this appeal as Kingsley has presented it to us, an appeal from a denial and a partial granting of a motion for a preliminary injunction. Accordingly, the merits of Kingsley's numerous statutory and constitutional arguments raised below are not before us, except as to his likelihood of success on them.

We agree with the district court that this case raises serious and disturbing constitutional issues. While civil forfeiture is always a harsh action, the seizure in this case was much more sweeping than ordinary seizures by customs officials or even seizures of large amounts of property from suspected drug dealers. Here, the government effectively took everything Kingsley had short of what he was wearing, and no hearing was provided for fifty days. Yet under the government's sweeping interpretation of the forfeiture statute the seizure could have even included the clothes on Kingsley's back. If this case continues to a trial on the civil forfeiture proceedings, as the district court evidently contemplates, the issue of the legality of the seizures, potentially involving the constitutionality of the civil forfeiture statute, must be resolved. This appeal, however, does not ask us to resolve those issues. It seeks preliminary relief only. We turn to the issues before us.

The first issue is whether the district court's bond requirement was an abuse of discretion. In *Crowley v. Local No. 82, Furniture and Piano Moving, Furniture Store Drivers, Helpers, Warehousemen,* *and Packers,* 679 F.2d 978 (1st Cir.1982), *rev'd on other grounds,* 467 U.S. 526, 104 S.Ct. 2557, 81 L.Ed.2d 457 (1984), we set out two factors that a district court should take into account in deciding whether to require a bond under Federal Rule of Civil Procedure 65(c).[8] They are:

> First, at least in noncommercial cases, the court should consider the possible loss to the enjoined party together with the hardship that a bond requirement would impose on the applicant.... Second, in order not to restrict a federal right unduly, the impact that a bond requirement would have on enforcement of the right should also be considered.

*Id.* at 1000. We also said that in cases where the likelihood of success is "extraordinarily high" this may be an additional reason not to require a bond. *Id.* at 1000 n. 25.

Kingsley contends that since the district court found that the government had shown no probable cause for the seizure of the contents of his home, that there was a "warrantless" seizure because the statutory admiralty warrant procedures were not followed, and that the fourth amendment had been violated, the likelihood of his success on the merits of the civil forfeiture action against the house contents or on the merits of the Rule 41(e) motion is "extraordinarily high." We are wary of speculating on the outcome of the government's forfeiture action or on the outcome of Kingsley's Rule 41(e) motion. We point out, to demonstrate that this is not an easy case, that there is some indication that dismissal of a forfeiture action is not the appropriate remedy when property subject to forfeiture has been illegally seized. *See Immigration and Naturalization Service v. Lopez-Mendoza,* 468 U.S.

*Torres v. United States,* 712 F.2d 717, 719 (1st Cir.1983).

**7.** In his preliminary injunction motion, Kingsley also asked for various other restraints on the government's control over his property that were not reasserted on appeal.

**8.** Federal Rule of Civil Procedure 65(c) provides in relevant part:

> (c) *Security.* No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained.

1032, 104 S.Ct. 3479, 3485–86, 82 L.Ed.2d 778, 5192 (1984).[9] And, although the district court's interpretation of our *Pappas* decision seemed to indicate that a fourth amendment violation occurred that should require outright return of Kingsley's property if the merits of the Rule 41(e) motion are reached, we are not prepared now to rule that *Pappas* is controlling and that the outcome is a foregone conclusion. As for the other factors to consider before requiring a bond, there is both a potential loss to the government of the forfeitable property if Kingsley were to sell it to an innocent buyer, and a real hardship on him if he is denied use of his property during the potentially long duration of the forfeiture action. Kingsley has not claimed that posting the bond has impaired his mounting an effective defense. Moreover, Kingsley himself, in his preliminary injunction motion, agreed "to give additional security in such sum as the Court deems proper under the circumstances." We cannot say that the district court abused its discretion by conditioning the return of the house contents on posting a $25,000 bond.

■ The second issue, the return of the house, is moot. Kingsley is presently in possession of his house under the terms of a residency agreement entered into between himself and the government. The agreement remains in effect until final resolution of the pending forfeiture proceedings. It restricts Kingsley's ability to alienate the house, makes him liable for damage to the property, and gives the DEA the right to inspect the property to assure compliance on twenty-four-hour written notice. The agreement calls for a $25,000 bond, but also provides that the bond already filed in the district court satisfies that requirement. We see no reason to change the conditions of the residency agreement when Kingsley has essentially

the relief he is demanding—possession of his house for purposes of habitation. Kingsley argues that he was forced into this agreement under duress and that since the DEA is ultimately in control of the property instead of the district court, he does not have relief equivalent to what he has requested. The government, he urges, can exercise its unlawful control over the house at any time in the future, leaving him at its "mercy." It may be that Kingsley felt compelled to enter into this agreement pursuant to the government's terms in order to have a place to live. But it is not an unconscionable agreement on its face, and Kingsley's counsel was unable at oral argument to point out any specific provisions that posed a real hardship. The distinction between possession under court-imposed restrictions or under these restrictions is not material. Finally, it is not true that the government has free reign over the house because it, too, is bound by the agreement. Under paragraph 11, any conflict over the terms of the agreement must be decided by the district court as part of the civil forfeiture action. Kingsley's rights are protected.

Our rulings render any discussion of the district court's disposition of the Rule 41(e) motion moot. Although Kingsley has challenged the district court's ruling that denied his Rule 41(e) motion as inapplicable in this case, he raised the issue only as part of his appeal of the preliminary injunction order. Consideration of that ruling could have no effect on our analysis of the district court's discretionary bond requirement, nor could it change the mootness of Kingsley's appeal of the order denying the return of his house. This does not mean, however, that we are affirming the district court's denial of the motion, only that we need not decide that issue now.

---

**9.** The Supreme Court stated in *Lopez-Mendoza* that

[t]he "body" or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an

unlawful arrest, search, or interrogation occurred. A similar rule applies in forfeiture proceedings directed against contraband or forfeitable property.

*INS v. Lopez-Mendoza*, 468 U.S. at 1039–43, 104 S.Ct. at 3485–86 (citations omitted).

*Appeal dismissed.* No costs. Writ of Mandamus denied.

COFFIN, Circuit Judge, concurring.

I concur with the judgment of the court and with its opinion. Although I agree that we cannot properly review the denial of appellant's Rule 41(e) motion in the context of this appeal, I am disturbed by the district court's finding that Fed.R.Crim.P. 41(e) is "not applicable" to this proceeding. *Application of Kingsley,* 614 F.Supp. 219, 221 n. 1 (D.Mass.1985). There can be no doubt that forfeiture pursuant to 21 U.S.C. § 881 is a "civil, *in rem* action that is independent of any factually related criminal actions." *United States v. One 1974 Porsche 911-S,* 682 F.2d 283, 285 (1st Cir. 1982). Due to the quasi-criminal nature of administrative forfeiture proceedings, however, claimants must be permitted to seek the return of property seized in violation of the Constitution by filing a motion pursuant to Fed.R.Crim.P. 41(e). *See United States v. Eight Thousand Eight Hundred and Fifty Dollars ($8,850) in United States Currency,* 461 U.S. 555, 569, 103 S.Ct. 2005, 2014, 76 L.Ed.2d 143 (1984) (In an administrative forfeiture case, "[i]f claimant believes the initial seizure is improper, he could file a motion under Federal Rule of Criminal Procedure 41(e) for the return of seized property."). If district courts uniformly refuse to entertain such motions, then claimants in Kingsley's position would possess no effective means to challenge the constitutionality of preindictment seizures and no immediate prospect of regaining possession of their property.

■ I also agree with my brother Torruella that the government's seizure of Kingsley's home in this case violated due process. Prior to initiating the preindictment seizure of a home pursuant to 21 U.S.C. § 881, the government must be required to demonstrate before a magistrate that preseizure notice would likely render the property unavailable for forfeiture *and* that less restrictive means to protect the legitimate governmental interest in the property do not exist. *See* 21 U.S.C.

§ 853(e)(2), (f). Absent such extraordinary circumstances, due process does not permit the government to initiate the forfeiture of a home by preindictment seizure without first affording the opportunity for an adversary hearing. I therefore agree with my brother Torruella that the district court, if asked to reconsider Kingsley's Rule 41(e) motion, should entertain the motion and rule on its merits in light of the constitutional standard we have elaborated in our separate opinions.

TORRUELLA, Circuit Judge (dissenting).

This is a most troubling case. Our society is today engaged in a vital struggle against crime, generally, and the illegal distribution and use of drugs, specifically. This is a struggle which I, like any other responsible citizen, fully support. But judicial obligations, as I understand them, go beyond the popular disposition of cases. I believe it is my duty to object when the government abridges the constitutional rights of a citizen, notwithstanding the purity of its motives or its justification when viewed in the light of the final outcome.

Try as we may, we cannot wipe the slate clean. When all is said and done the record establishes a series of ex parte actions and Catch-22 situations, which are more than vaguely reminiscent of a Star Chamber proceeding.

I will not fully recount the facts stated in the majority opinion. Suffice it to say that on the basis of a secret affidavit, appellant was on May 3, 1985 dispossessed of all his worldly goods, even his dogs and cockateel, to say nothing of such daily necessities as a toothbrush, clothes, food, and *his home.* Seven months passed before a criminal indictment was returned on November 26, 1985. In the meantime the parade of horrors described in the majority opinion followed its course, not the least of which was the initiation of the administrative forfeiture of appellant's residence by notifying him of the commencement of these proceedings at the very home from which he was ousted!

Without straining the imagination unduly it would appear that the sequence of events, as well as several of the procedural and substantive provisions used against appellant, raise facially serious constitutional questions. Appellant has attempted to raise these issues and to seek relief at every step of these proceedings, and before all levels of the federal judiciary. Despite recognition of the constitutional seriousness of these questions by the magistrate, and of several "important and disturbing issues" by the district court (a conclusion apparently agreed to by the majority, *ante,* at 578) every effort has been made thus far to avoid ruling upon the constitutional questions presented. The majority, unpersuasively in my view, repeats the act of judicial avoidance that has come to characterize this case. I therefore dissent.

## I

My comments on this case are both procedural and substantive. As to the procedural issues, it is most important to note that neither the majority nor I condone the district court's finding that Kingsley's Rule 41(e) petition was "inapplicable." Rule 41(e) provides individuals a mechanism to rectify and respond to unlawful governmental takings which are not accompanied by complaints and/or indictments. *See Linn v. Chivatero,* 714 F.2d 1278, 1281 (5th Cir.1983); *Richey v. Smith,* 515 F.2d 1239 (5th Cir.1975). More importantly, and contrary to the district court's conclusion, preindictment or pre-civil forfeiture complaint jurisdiction over Rule 41(e) petitions is *not* altered by the fact that the seizure is for purposes of civil forfeiture. *United States v. Eight Thousand Eight Hundred Fifty Dollars ($8,850.00) in U.S. Currency,* 461 U.S. 555, 569, 103 S.Ct. 2005, 2014, 76 L.Ed.2d 145 (1982). Thus, had Kingsley appealed the denial of his Rule 41(e) petition separately (and not as part of his Rule 65 appeal), we arguably could have reviewed the district court's jurisdictional error below and remanded for decision on the

Rule 41(e) merits. *Richey v. Smith, supra,* at 1242–43. As things stand, however, Kingsley's sole Rule 41 recourse would appear to be one of requesting reconsideration by the district court. *See In Re Worksite Inspection of Quality Products,* 592 F.2d 611, 614–16 (1st Cir.1979) (setting forth equitable criteria to be applied in deciding Rule 41(e) petitions); *Hunsucker v. Phinney,* 497 F.2d 29 (5th Cir.1974), *cert. denied,* 420 U.S. 927, 95 S.Ct. 1124, 43 L.Ed.2d 397 (1975) (same).

My next procedural comment relates to the district court's treatment of the Rule 65 motion for preliminary injunction that was before it, and from which Kingsley appeals. Kingsley expressly raised Fourth and Fifth Amendment challenges to the seizure in his Rule 65 motion. The district court, however, avoided these constitutional questions as to the home by ruling *against* Kingsley under statutory analysis. Such an avoidance of constitutional issues is of course not permissible, especially where the result would be to insulate *all* such statutes, and seizures pursuant to them, from constitutional scrutiny. Thus, I agree with Kingsley that he properly raised constitutional claims below, that these constitutional merits were improperly avoided by the district court, and that they are before us today.

## II

As to the substantive issues raised by this appeal, our inquiry is essentially to determine whether the district court's rulings on Kingsley's home and its contents amounted to an abuse of discretion.

### A. *The contents*

The undisputed language of the warrant below authorized the seizure of a "residence *and its contents.*" (Emphasis supplied). This reference to "contents" could not be more general or broad. It would seem that the Fourth Amendment ban on general warrants has some relevance to such an all-encompassing seizure.[1] *See Lo-*

---

1. U.S. Const., Amend. IV:

> The right of the people to be secure in their persons, houses, papers, and effects, against

*Ji Sales, Inc. v. New York,* 442 U.S. 319, 325, 99 S.Ct. 2319, 2323, 60 L.Ed.2d 920 (1978). In fact, the Magistrate who issued the warrant stated that he knew he had authorized the seizure of items not subject to forfeiture. This would seem to imply an admission of no probable cause *and* a concession of improper broadness. Finally, the district court found that the government's affidavit did not "give a clue," much less establish probable cause, for the seizure of the home's contents. *Application of Kingsley,* 614 F.Supp. 219, 225 (D.Mass. 1985). I fail to see how, under such circumstances, the district court could require Kingsley to pay $25,000 to obtain relief from the government's mistake.

With such undisputed facts and findings before us, I cannot agree with the majority that Kingsley's likelihood of success was not "extraordinarily high." *Crowley v. Local No. 82,* 679 F.2d 978, 1000 n. 25 (1st Cir.1982). Indeed, his likelihood of success on the Fourth Amendment merits is to me self-evident, as I see no question but that the Fourth Amendment applies. *See United States v. One Hundred Twenty-Eight Thousand Thirty-Five Dollars ($128,-035.00) in U.S. Currency,* 628 F.Supp. 668 (S.D.Ohio 1986). Therefore, I would order the bond vacated without prejudice to the government to make a showing of its forfeiture interest on remand, and hence, to justify the bond's reinstatement.

B. *The house*

█ As to the taking of Kingsley's home, I do not regard the original seizure as lawful. Therefore, because the DEA-drafted residency agreement is a product of that seizure, because I cannot view the circumstances under which it was signed as anything but duress, and because I regard the *self-executing* 24–hour search clause as materially different from judicially supervised relief, I cannot agree with the majority's conclusion of mootness.

The reason I regard the original seizure as unlawful is that I do not believe Kingsley received the preseizure hearing to which he was entitled. It has already been held that, at the least, due process requires an *ex parte* Magistrate probable cause determination prior to seizing real estate (not movable cars, boats and planes) under the civil forfeiture statute. *See United States v. Certain Real Estate Property Located at 4880 S.E. Dixie Highway,* 612 F.Supp. 1492 (D.C.Fla.1985).

The question posed by Kingsley, however, is whether due process requires *more* than the *ex parte* Magistrate probable cause review that he received below.[2]

The criminal forfeiture statute authorizes pre-indictment seizures of forfeitable property, which includes seizures of real estate. 21 U.S.C. § 853(b)(1) and (f). However, the government must first make three showings, in an *ex parte* proceeding, before an independent judicial officer: (1) that there is probable cause to seize the property; (2) that preseizure notice would be likely to render the property unavailable for forfeiture (i.e., an "extraordinary situation"), and (3) that less restrictive means— i.e., bond, restraining order, lis pendens— will not suffice to protect the government's interest. 21 U.S.C. § 853(e)(2) and (f).

---

unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and *particularly describing the* place to be searched, and the persons or *things to be seized.*
Emphasis supplied.

2. The assertion that due process does not even require an *ex parte* Magistrate's review of the evidence prior to a seizure of real estate runs directly contrary to the *Calero-Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974) holding that waiver of the pre-seizure hearing requirement can only occur in an "extraordinary situation." *Id.* at 684–85, 94 S.Ct. at 2092. Accordingly, because I regard the taking of real estate as distinguishable from the "extraordinary situation" of a movable yacht present in *Pearson Yacht,* I do not view the amendment to the admiralty rules as constitutional when applied to real estate. *See* majority opinion, *ante,* at 575, n. 3. Regardless, given that the Government did not proceed under the admiralty rules, the constitutionality of the new admiralty rule is not before us.

I regard the Congressional weighing of due process considerations, set forth in the criminal forfeiture statute, not only as proper, but as mandated by the Constitution. Accordingly, I would hold that, *where we are confronted with the preindictment seizure of an individual's home,* the government must make the same showings necessary to obtain such a seizure in the civil forfeiture context as must be made in the criminal forfeiture context. The hearing necessary prior to a deprivation of property is governed by a balancing of considerations. *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976). Where a home is involved, I see no harm to law enforcement in requiring the government to show why a *seizure* is needed where, upon the filing of a civil forfeiture complaint, a *lis pendens,* restraining order and bond would protect the government's interest, and could all be sought as part of the civil action. Therefore, I would reverse the denial of the preliminary injunction as to the home without prejudice to the government's reseizing it upon a proper showing.[3]

There is no question in my mind that the drug problem facing our country is a serious if not a grave one. I do not read the majority or the concurrence as endorsing or condoning the government's conduct below. Were we to do so, it would in my view amount to holding that because appellant is an alleged drug dealer, he is entitled to less process under the Constitution than is due other citizens. If history has taught us anything it is that such short cuts, although popular at their inception, are in the long run harmful to our democratic form of government. *See Korematsu v. United States,* 323 U.S. 214, 65 S.Ct. 193, 89 L.Ed.2d 194 (1944). At the very least, this court should exercise its supervisory powers to prevent the recurrence of the injustice which this case seems to represent.

---

**3.** Since the government has already shown probable cause, it could only obtain *seizure* on remand by presenting evidence to the district court that Kingsley may encumber or transfer the property and that a restraining order, bond and the current *lis pendens* would not sufficiently protect the government's interest.