956 F.2d 1300
 RICHMOND TENANTS ORGANIZATION, INCORPORATED; Teresa W.
Hopson; Mamie E. Robinson; Shirley Washington; Resident
Advisory Board of Housing Authority of Baltimore; Elizabeth
Wright; National Tenants Organization, Plaintiffs-Appellees,
v.
Jack KEMP, Secretary of Housing and Urban Development;
Attorney General of the United States; United
States Department of Justice,
Defendants-Appellants,
and
Richmond Redevelopment and Housing Authority, Defendant.
 No. 91-1520.
 United States Court of Appeals,
Fourth Circuit.
 Argued Oct. 28, 1991.
Decided March 2, 1992.
 
 1
 Robert V. Zener, Appellate Litigation Counsel, Civil Div., U.S. Dept. of Justice, Washington, D.C., argued (Stuart M. Gerson, Asst. Atty. Gen., Civil Div., U.S. Dept. of Justice, Washington, D.C., Kenneth E. Melson, U.S. Atty., Richmond, Va., on brief), for defendants-appellants.
 
 
 2
 Anne Holton, Central Virginia Legal Aid Society, Inc., Richmond, Va., argued (Henry W. McLaughlin, III, Central Virginia Legal Aid Society, Inc., Richmond, Va., Florence Wagman Roisman, National Housing Law Project, Washington, D.C., David B. Bryson, National Housing Law Project, Berkeley, Cal., Stuart R. Cohen, Barbara A. Samuels, Legal Aid Bureau, Inc., Baltimore, Md., on brief), for plaintiffs-appellees.
 
 
 3
 Before MURNAGHAN and NIEMEYER, Circuit Judges, and HARVEY, Senior District Judge for the District of Maryland, sitting by designation.
 
 OPINION
 ALEXANDER HARVEY, II, Senior District Judge:
 
 4
 This is an appeal from a final order of the United States District Court for the Eastern District of Virginia. 753 F.Supp. 607. In ruling on cross-motions for summary judgment, the district court granted plaintiffs' motion for summary judgment, and held that the governmental eviction of a public housing tenant without prior notice and an opportunity for a hearing was violative of the due process clause. The court permanently enjoined, on a nationwide basis, any evictions without notice and a hearing, except in "exigent circumstances." The federal defendants have appealed.
 
 
 5
 For the reasons stated, we affirm the order of the district court.
 
 
 6
 * This suit was brought against the Secretary of Housing and Urban Development ("HUD"), the Attorney General, the Department of Justice ("DOJ") and the Richmond Redevelopment and Housing Authority ("RRHA").[1] The amended complaint sought a declaration that seizures of the homes of public housing tenants without prior notice and a hearing and the summary evictions of those tenants under the National Public Housing Asset Forfeiture Project (hereinafter the "Forfeiture Project") were unlawful. As relief, plaintiffs sought a preliminary and permanent injunction prohibiting such seizures and evictions as well as any steps taken to implement the Forfeiture Project.
 
 
 7
 The amended complaint named seven plaintiffs: three organizations and four individuals. The three organizations are the National Tenants Organization, which is a national association of tenants' organizations ("NTO"); the Richmond Tenants Organization, which is an organization of public housing tenants in Richmond, Virginia ("RTO"); and the Resident Advisory Board, which is an organization of public housing tenants in Baltimore. The four individuals are tenants in public housing projects in Baltimore and Richmond.
 
 
 8
 The Forfeiture Project was a joint effort by HUD and the DOJ, designed to encourage United States Attorneys to utilize the forfeiture procedures of the Comprehensive Drug Abuse and Control Act of 1970, 21 U.S.C. § 801 et seq., as amended, (the "Act") for the purpose of promptly removing drug offenders from public housing.[2] Section 881 of the Act does not contain specific procedural rules for use in civil forfeiture proceedings, but rather incorporates procedural rules of more general application. Section 881(b) directs that seizure may be had "upon process issued pursuant to the Supplemental Rules for Certain Admiralty Claims." These Admiralty Rules do not require that a warrant be obtained on a showing of probable cause before forfeiture action is taken. Alternatively, § 881(b) authorizes the government to proceed by requesting the issuance of a seizure warrant pursuant to Rule 41 of the Federal Rules of Criminal Procedure. That Rule requires that an ex parte determination be made by a judicial officer before a warrant for the seizure of property is issued. It is the latter procedure which the government sought to use in this case under the Forfeiture Project.
 
 
 9
 After the seizure of leasehold property under Section 881(a)(7), individuals with an interest in the property may file a claim, and the case then proceeds as a civil action. Initially, the government is required as its prima facie case to prove the existence of probable cause to believe that the property was used to facilitate the violation of drug laws. A claimant may then demonstrate that the government lacked probable cause, or that the claimant was an "innocent owner" and did not know of or permit the illegal activity. 19 U.S.C. § 1615 (incorporated by 21 U.S.C. § 881(d)); 21 U.S.C. § 881(a)(7).
 
 
 10
 While the case is pending, the government is deemed to be the owner of the seized property. However, the statute does not specify whether the tenants meanwhile are permitted to remain in possession. The Forfeiture Project, which is described below, sets forth the circumstances whereby tenants in possession of seized property would be immediately evicted from the premises.
 
 
 11
 The Forfeiture Project was originated by HUD, which enlisted the participation of the DOJ and then selected public housing authorities in more than 20 cities for inclusion in the Project. Local participation on behalf of HUD in the Forfeiture Project was to be carried out by the local public housing authorities (PHAs), who, under contracts with HUD, manage public housing in their respective localities. The PHAs' role in the Forfeiture Project included sending Forfeiture Project letters to tenants, selecting and forwarding to DOJ personnel potential cases for inclusion in the Project, acting as substitute custodian of the seized leaseholds, and performing other duties prescribed for them by HUD as part of the Project. Local participation by the DOJ in the Project was to be undertaken by Assistant United States Attorneys and Deputy United States Marshals.
 
 
 12
 Acting under the Forfeiture Project, the DOJ and HUD gave the PHAs and DOJ personnel non-binding guidelines for selecting properties for seizure, and, in particular, suggested that a violator must have participated in at least two felony drug offenses before action was taken. The only binding requirement was that an Assistant United States Attorney must first have obtained from a judicial officer an ex parte warrant prior to seizure, whether or not eviction was sought.
 
 
 13
 Thus, the guidelines dealt only with the initiation of proceedings and did not address circumstances under which DOJ personnel could remove tenants prior to notice and a hearing. On October 9, 1990, after this litigation commenced, the DOJ issued a written statement of policy (referred to by the parties as the "Copeland Memorandum") which for the first time described the circumstances under which immediate eviction of a tenant without notice and a hearing would be appropriate. However, the Copeland Memorandum was permissive and left ultimate decisions regarding seizures and evictions to the discretion of Assistant United States Attorneys.
 
 
 14
 The Copeland Memorandum states that it "is the Department's national policy and practice," except in the Second Circuit, not to grant advance notice and an opportunity to be heard prior to the seizure of real property. It further states that "[a]s a general rule, occupants of real property seized for forfeiture should be permitted to remain in the property pursuant to an occupancy agreement pending forfeiture," provided that certain other conditions are met. However, the Memorandum indicated that in particular cases summary eviction of tenants should be sought. Several factors were listed for consideration by United States Attorneys in selecting cases for the immediate eviction of tenants.[3] As noted hereinabove, the selection of cases in which tenants would be immediately removed was left to the discretion of local Assistant United States Attorneys.
 
 
 15
 In this case, the parties have entered into a Stipulation which indicates that governmental policy relating to the removal of tenants from seized properties differed somewhat from that suggested by the Copeland Memorandum. The parties have stipulated that "HUD and DOJ encouraged the localities selected for participation in the Forfeiture Project to pursue immediate removal of tenants from their homes at the time the seizure warrants were to be executed in their localities as a major element of the Forfeiture Project." It was further stipulated that "[b]ut for this litigation, DOJ personnel would have immediately removed tenants from their homes at the time the seizure warrants were served in many of the forfeiture actions filed pursuant to the Forfeiture Project."
 
 
 16
 The United States Attorney in Richmond has asserted that his policy is never to seek immediate removal of tenants before a hearing. Evidence was not presented of any summary removal of tenants in the Eastern District of Virginia, nor was there evidence of any such removals in Baltimore. However, it was stipulated that no-notice removals were planned for Baltimore "when cases became ready," although "as yet, Baltimore has not yet filed any cases as part of the Forfeiture Project." Credible evidence does not exist in the record here that the federal defendants had actually undertaken no-notice evictions under the Forfeiture Project or had taken any other action in violation of the district court's injunction.[4]
 
 
 17
 Tenants were notified of the government's new Forfeiture Project by way of a letter styled "Notice to residents," which was sent to all public housing residents in the selected cities. The letter, sent by the PHAs in early June of 1990 at the direction of HUD, included the following language:
 
 
 18
 Under federal law, a unit can be taken by the United States Government if any member of the household is using the unit for selling drugs. This may result in the immediate eviction of the entire household unless the resident can prove that he or she did not know about the criminal conduct.
 
 
 19
 Each resident must make sure that his or her unit is not being used for drug-related activities by members of the household or by guests. To protect yourself, make sure that you are aware of what is happening in your unit. If you find that drug dealing is taking place, you should see to it that the person(s) involved leave your household. If you need help doing this, you may call the police, housing authority or development manager. Otherwise, you face the seizure of your unit by the United States government and immediate eviction.
 
 
 20
 (Emphasis in original.)
 
 
 21
 Affidavits were submitted to the district court by individual plaintiffs and members of the plaintiff organizations stating that the government's letter made them feel "intimidated," "upset," "insulted," and "afraid." None of the affiants admitted to knowledge of the existence of or use of drugs in their apartments. One affiant stated that she was "anxious and fearful" because one of her sons "uses, or has used" drugs and "I do not allow him to visit me in my home, but cannot prevent him from coming back to [the project] and cannot be absolutely sure that a guest would not let him in my apartment."
 
 
 22
 Alerted by notice of the planned seizures and evictions, plaintiffs filed their complaint in the district court on June 15, 1990. On June 18, 1990, the district court issued a preliminary injunction prohibiting evictions without prior notice and a hearing and enjoining defendants from requiring tenants to execute occupancy agreements as a condition of avoiding eviction. That preliminary injunction was expressly limited to public housing in Richmond.
 
 
 23
 Plaintiffs then filed an amended complaint on June 22, 1990, adding as plaintiffs a Baltimore public housing resident, the Baltimore Resident Advisory Board and the NTO. At the same time, plaintiffs filed a motion seeking certification of a nationwide class which would include all public housing residents in the Forfeiture Project cities. Acting on another motion filed by plaintiffs, the district court extended the preliminary injunctive relief to the prospective nationwide class, but limited the scope of the relief so as to permit immediate evictions in "exigent circumstances."
 
 
 24
 Cross-motions for summary judgment were then filed by the parties. On December 19, 1990, the district court granted plaintiffs' motion for summary judgment, denied defendants' motion for summary judgment, denied class certification as unnecessary, and granted permanent injunctive relief. In its Memorandum Opinion, the district court held that eviction of a public housing tenant without notice and a prior hearing would violate the tenant's right to due process of law. The court concluded that in light of the "greater protection under the law" to homes as contrasted with personal property, "ex parte probable cause hearings administered prior to seizure of public housing leaseholds do not provide sufficient constitutional protection of tenants' expectations of freedom and privacy in their homes."
 
 
 25
 In its Order of December 19, 1990, the Court permanently enjoined, on a nationwide basis, any evictions without notice and a hearing, except in "exigent circumstances." Cross-motions to amend the final judgment were then filed by the parties. In its further Order entered on February 14, 1991, the court declined to prohibit seizures of properties without prior notice and a hearing but did prohibit official entry at will into public housing apartments until a hearing was held.
 
 
 26
 Appellants have taken this appeal from the permanent injunction entered by the court below.
 
 II
 
 27
 Appellants first assert that these Appellees lack standing to bring the present challenges to the Forfeiture Project. That issue was briefed and argued below, and the district court, although not explicitly so ruling, implicitly determined that Appellees had standing. We agree.
 
 
 28
 Appellants rely principally on a series of cases involving actions seeking injunctive relief against "systematic law enforcement practices" in which the Supreme Court has held that "absent an allegation of a specific threat of being subject to the challenged practices, plaintiffs [have] no standing to ask for an injunction." Allen v. Wright, 468 U.S. 737, 760, 104 S.Ct. 3315, 3329, 82 L.Ed.2d 556 (1984), discussing O'Shea v. Littleton, 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974); Rizzo v. Goode, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976); Los Angeles v. Lyons, 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983). Appellants point out that no actual evictions have taken place under the Forfeiture Project, and contend that Appellees cannot point to any activity of Appellants which would subject Appellees to the allegedly illegal conduct.
 
 
 29
 On the record here, we conclude that Appellees have standing to seek injunctive relief in this case because they have sustained an actual threat of injury. Seizures of property have occurred in Richmond which would have resulted in the evictions of tenants had the injunction not been issued by the district court.[5]
 
 
 30
 Under Pennell v. City of San Jose, 485 U.S. 1, 108 S.Ct. 849, 99 L.Ed.2d 1 (1988), plaintiffs have standing to sue to prevent anticipated future conduct if they "demonstrate a realistic danger of sustaining a direct injury as a result." Id. at 8, 108 S.Ct. at 855 (quoting Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 298, 99 S.Ct. 2301, 2308, 60 L.Ed.2d 895 (1979)). Article III does not require that a plaintiff await consummation of the threatened injury before seeking relief in court. Babbitt, 442 U.S. at 298, 99 S.Ct. at 2308.
 
 
 31
 In this particular case, the parties have stipulated that there was a realistic danger that the plaintiffs would suffer actual injury. The Stipulation provided: "But for this litigation, DOJ personnel would have immediately removed tenants from their homes at the time the seizure warrants were served in many of the forfeiture actions filed pursuant to the Forfeiture Project." In entering into this Stipulation, the federal defendants have acknowledged that the DOJ was encouraging the widespread use of the eviction procedures described in the Forfeiture Project. Among the plaintiffs are organizations representing residents of Atlanta and Baltimore housing projects where the plan was to undertake evictions without notice. Accordingly, there was a specific threat that members of the plaintiff organizations would have been or will be subject to evictions, although the particular members themselves may not be known. Cf. Pennell, 485 U.S. at 4-8, 108 S.Ct. at 853-56 (association had standing because of the likelihood that the challenged ordinance would be enforced against its members; specific members not yet known).
 
 
 32
 For all these reasons, we conclude that the Appellees have standing to bring this action.
 
 III
 
 33
 Appellees argued below that the planned Forfeiture Project evictions are invalid on statutory and constitutional grounds.[6] The district court addressed only the constitutional argument and held that the eviction of a public housing tenant without prior notice and a hearing violates due process, except in exigent circumstances.[7] This Court agrees that, absent exigent circumstances, no-notice evictions violate due process.
 
 
 34
 Appellants broadly assert in this appeal that the federal government is constitutionally entitled to evict public housing tenants under the Forfeiture Project whether or not exigent circumstances exist. The Second Circuit has held that, absent exigent circumstances, seizure of a person's home without notice and a prior hearing violates due process. United States v. Premises and Real Property at 4492 South Livonia Rd., 889 F.2d 1258, 1264 (2d Cir.1989), reh. den., 897 F.2d 659 (2d Cir.1990) ("Livonia ").[8] See also United States v. Parcel I, Beginning at a Stake, 731 F.Supp. 1348 (S.D.Ill.1990) ("Parcel I ").[9] Since the immediate and summary eviction of tenants is a more serious constitutional deprivation than the mere seizure of the property itself, we conclude that, in the absence of exigent circumstances, the Due Process Clause of the Fifth Amendment requires the government to provide for notice and an opportunity to be heard before a tenant may be evicted. In re Application of Kingsley, 802 F.2d 571, 582 (1st Cir.1986) (Coffin, J., concurring)[10]; United States v. A Leasehold Interest in Property Located at 850 S. Maple, Ann Arbor, Mich., 743 F.Supp. 505 (E.D.Mich.1990) ("Ann Arbor ").[11] Although the Eleventh Circuit has held that no-notice seizures of real property are constitutional, it is not clear from the opinion whether the residents were living on the property at the time of seizure and, if so, whether evictions also took place. United States v. A Single Family Residence and Property Located at 900 Rio Vista Blvd., 803 F.2d 625, 631-32 (11th Cir.1986).
 
 
 35
 In Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), the Supreme Court established that procedural due process requires notice and an opportunity to be heard before the government may authorize its agents to seize property, except in "extraordinary situations." Id. at 91, 92 S.Ct. at 2000. Three criteria must be satisfied for the government to prove the existence of an extraordinary situation: (1) the seizure must be directly necessary to secure an important governmental or general public interest; (2) there must be a special need for very prompt action; and (3) the person initiating the seizure must be a government official responsible for determining, under the standards of a narrowly drawn statute, that seizure is necessary and justified in the particular instance. Id.
 
 
 36
 Appellants argue that the Fuentes standard must be applied in this case in the same manner as approved by the Supreme Court in Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974).
 
 
 37
 In Calero-Toledo, the Supreme Court rejected the contention that the Due Process Clause required notice and an opportunity to be heard before seizure by the government of a yacht allegedly used to transport drugs. The Court found the following factors to have existed in that case: (1) the seizure served significant governmental interests, because it permitted the government to assert in rem jurisdiction over the property in forfeiture proceedings and thereby fostered the public interest in enforcing the drug laws by preventing further illicit use of the property; (2) pre-seizure notice would frustrate the purpose of the seizure laws because of the yacht's mobility and (3) the seizure was initiated by government officials. Id. at 679-80, 94 S.Ct. at 2089-90. The Court placed heavy emphasis on the mobility factor which the Court found to be an "extraordinary situation." Id.
 
 
 38
 However, the summary eviction of tenants from a public housing project is hardly comparable to the seizure of a yacht. In this case, the government asserts the right to summarily evict tenants without showing that an extraordinary situation existed like that in Calero-Toledo. Here, the order of the district court does permit an eviction to be undertaken if the government proves the existence of exigent circumstances. Unlike boats and cars which are extremely mobile, a home or apartment cannot be readily moved or dissipated. Various courts have distinguished a home from a pleasure yacht or currency. See, e.g., Livonia, 889 F.2d at 1263-65. Moreover, an individual's expectation of privacy and freedom from governmental intrusion in the home merits special constitutional protection. Id. at 1264.
 
 
 39
 Appellants argue that drug activity in a public housing project constitutes in every case an extraordinary situation which requires prompt governmental action to protect other innocent tenants from dangerous drug activities in their buildings. On the record here, we disagree. While the level of and type of drug trafficking in a particular location might amount to exigent circumstances warranting a summary eviction, the mere use or possession of narcotics would not in every case constitute an extraordinary situation permitting federal law enforcement officers to summarily remove all persons occupying the housing unit where the activity had occurred.
 
 
 40
 Moreover, the government's position fails to satisfy the "least restrictive alternative" analysis. Livonia, 889 F.2d at 1265; Kingsley, 802 F.2d at 580. Appellants argue that mere seizure of the property and arrest of the individual conducting the illegal activity would be insufficient because drug users or dealers may obtain bail and return to the public housing unit. However, this is not the only alternative available to the government. As noted in Livonia and Kingsley, the government's objective in evicting drug dealers from public housing may be accomplished by different procedures, namely: "by the filing of a lis pendens ... along with a restraining order or bond requirement." Livonia, 889 F.2d at 1265. Following notice, a necessary postseizure eviction might then be obtained after a hearing in a forfeiture proceeding.
 
 
 41
 For these reasons, we hold that, absent exigent circumstances, eviction of a public housing tenant without prior notice and an opportunity to be heard violates due process.
 
 IV
 
 42
 Appellants also challenge the nationwide scope of the permanent injunction issued by the district court. The injunction, it is argued, has the potential to serve as a vehicle for supervision by the Virginia district court of the conduct of forfeiture litigation in other district courts throughout the country. Appellants assert that the district court has by its order reserved the right to exercise its contempt power and decide any forfeiture case anywhere in the country whenever an attorney makes a mistaken assessment of the case.
 
 
 43
 The scope of the injunction issued by the district court is further challenged on the ground that the term "exigent circumstances" has not properly been defined. It is argued that a risk of parallel proceedings is created when a United States Attorney in one district brings a forfeiture proceeding in circumstances which he believes to constitute "exigent circumstances" and the Virginia district court disagrees with that assessment of the case. Relying on O'Shea, supra, Appellants contend that it is inappropriate for a federal district court to use its equitable powers to control proceedings in other federal courts.
 
 
 44
 It is well established, however, that a federal district court has wide discretion to fashion appropriate injunctive relief in a particular case. Lemon v. Kurtzman, 411 U.S. 192, 200, 93 S.Ct. 1463, 1469, 36 L.Ed.2d 151 (1973); Lone Ranger Television, Inc. v. Program Radio Corp., 740 F.2d 718 (9th Cir.1984). When required by the circumstances of the case, district courts have issued injunctions which apply to conduct by the Attorney General of litigation in other federal courts. PHE, Inc. v. United States Department of Justice, 743 F.Supp. 15 (D.D.C.1990); Freedberg v. United States Department of Justice, 703 F.Supp. 107 (D.D.C.1988).
 
 
 45
 In this particular case, actions taken by the Virginia district court after issuance of the preliminary injunction belie any contention that the court intended itself to routinely supervise the conduct of litigation in every other court in the country. Shortly after entry of the preliminary injunction, United States Marshals in Macon, Georgia, conducted a drug raid which plaintiffs in this case believed to have violated the district court's order of June 18, 1990. In October of 1990, plaintiffs filed a motion in the Virginia district court seeking a contempt citation. The district court denied the motion, although noting in its Memorandum of October 12, 1990 that the local prosecutor "may have violated the spirit of the Court's June 22, 1990 order." The Court further observed that "[t]he June 22, 1990 order issued by this Court reserved for local district judges the discretionary task of determining in individual cases whether exigent circumstances justify nonotice evictions.... These issues are appropriately left to the discretion of the local judge because of their fact-specific nature."
 
 
 46
 Appellants' challenge to the scope of the injunction will be rejected. The injunction issued by the district court was appropriately tailored to prevent irreparable injury to plaintiffs while permitting evictions to occur on proof of "exigent circumstances." In the exercise of its equitable powers, the Virginia district court has interpreted its orders as permitting local judicial officers to determine ex parte whether exigent circumstances in a particular case would justify a no-notice eviction.[12] As so interpreted, the order entered below will not be disturbed.
 
 V
 
 47
 For the foregoing reasons, the judgment of the district court will be affirmed.
 
 
 48
 AFFIRMED.
 
 
 
 [1]
 The RRHA was dismissed by agreement of the parties after it had given notice of the court's preliminary injunction to its residents
 
 
 [2]
 Section 881(a)(7) provides in pertinent part:
 The following shall be subject to forfeiture to the United States and no property right shall exist in them:
 (7) All real property, including any right, title, and interest (including any leasehold interest) in the whole of any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this title punishable by more than one year's imprisonment, except that no property shall be forfeited under this paragraph, to the extent of an interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.
 
 
 [3]
 The Copeland Memorandum listed the circumstances under which immediate eviction might be sought as follows: "Immediate removal of all occupants at the time of seizure should be sought if there is reason to believe that failure to remove the occupants will result in one or more of the following: (a) Danger to law enforcement officials or the public health and safety; (b) The continuation of illegal activity on the premises; or (c) Interference with the Government's ability to manage and conserve the property."
 
 
 [4]
 Plaintiffs submitted a newspaper article as evidence that pre-hearing evictions had taken place under the Forfeiture Project at a public housing unit in Atlanta. However, it is not clear from the sketchy factual account in the article whether the Atlanta drug "bust" involved evictions in violation of the district court's order. It appears that the law enforcement officials simply arrested three individuals and seized two units by posting seizure warrants on the front doors. The article also referred to a drug raid that had taken place in Macon, Georgia. On the basis of this raid, plaintiffs filed a motion seeking a contempt citation in the district court in Virginia. The district court denied the motion stating that "[t]he Macon case appears to be an isolated instance where an over-zealous assistant district attorney may have violated the spirit of the Court's [preliminary injunction]."
 
 
 [5]
 Since we have concluded that Appellees have standing in this case because of a specific threat of injury, it is not necessary to address Appellees' alternative contention that the tenants suffered actual injury as a result of their receipt of letters from local PHAs threatening them with eviction
 
 
 [6]
 Plaintiffs have a judicially implied right of action to seek injunctive relief against federal actors to prevent a violation of their constitutional rights. Reuber v. United States, 750 F.2d 1039, 1061 (D.C.Cir.1984) ("Federal injunctive relief traditionally is presumed available against federal actors committing constitutional violations."). Cf. Dunbar Corp. v. Lindsey, 905 F.2d 754 (4th Cir.1990) (court held that plaintiff had right of action to seek damages and injunctive relief for alleged due process violations by federal actors)
 
 
 [7]
 Plaintiffs argued in the district court that the federal defendants, by seeking to remove public housing tenants under § 881(a)(7), have violated § 1437d(k) of the Housing Act, 42 U.S.C. § 1437d(k). Had the district court accepted this argument, it would have required the federal defendants to provide notice and a hearing before all evictions, whether or not "exigent circumstances" were present. However, the district court did not address the statutory issue, and plaintiffs, although renewing their statutory argument here, have not taken a cross-appeal from the district court's order which held that defendants have a right to evict tenants without notice and a hearing in exigent circumstances. Were we to address the statutory issue and agree with plaintiffs, it would be necessary to remand the case for the entry of a broader decree. In the absence of a cross-appeal, we have decided that we should not address the statutory issue in this appeal. See United States v. American Ry. Express Co., 265 U.S. 425, 435-36, 44 S.Ct. 560, 563-64, 68 L.Ed. 1087 (1924); see also Mills v. Electric Auto Lite Co., 396 U.S. 375, 381 n. 4, 90 S.Ct. 616, 620 n. 4, 24 L.Ed.2d 593 (1970). Like the district court, we decide this case on constitutional grounds and express no opinion on the statutory issue
 
 
 [8]
 In Livonia, the government seized the property prior to notice and a hearing, but allowed the resident to remain on the premises pursuant to an occupancy agreement. Livonia, 889 F.2d at 1261. The district court's order in this case, as modified, permits limited seizures by the posting of a seizure warrant on the property but prohibits official entry into a residence prior to a hearing. Appellees have not taken a cross-appeal from that portion of the district court's order permitting no-notice seizures of properties
 
 
 [9]
 In Parcel I, the government seized the tenants' apartment and permitted the tenants to stay pursuant to an occupancy agreement. Id. at 1354 n. 3
 
 
 [10]
 In Kingsley, the resident was immediately evicted from the premises. The resident was not permitted to return to the premises for a period of four months, at which time the resident entered into an occupancy agreement with the government which permitted his return
 
 
 [11]
 In Ann Arbor, an entire family of public housing tenants was immediately evicted from their unit by United States Marshals. The family was not permitted to return to the apartment until almost a month later when the lessee entered into an occupancy agreement with the government
 
 
 [12]
 Although in its Memorandum of October 12, 1990 the district court referred to local "district judges," it is apparent from other orders entered in the case that the court's intention was that local magistrate judges as well as district judges were empowered to make this ex parte determination