MICHAEL J. KINGSLEY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Kingsley v. Commissioner
Docket No. 11439-87
United States Tax Court
T.C. Memo 1990-79; 1990 Tax Ct. Memo LEXIS 79; 58 T.C.M. (CCH) 1428; T.C.M. (RIA) 90079; February 20, 1990
Elliot D. Lobel, for the petitioner. Charles Maurer, for the respondent. RUWE
MEMORANDUM FINDINGS OF FACT AND OPINION OPINICN RUWE, Judge: On December 12, 1986, a jeopardy assessment was made against petitioner for taxable years 1980, 1981, 1982, 1983, and 1984 pursuant to section 6861(a). [1] In a notice of deficiency dated February 3, 1987, respondent determined deternined deficiencies in petitioner's Federal income taxes and additions *80 to tax as follows: Additions to Tax Year
Deficiency
Sec. 6653(b)
Sec. 6654
1980
$  9,418.57
$  4,709.29
$   599.88
1981
48,927.53
24,463.77
3,744.85
Additions to Tax
Year
Deficiency
Sec. 6653(b)(1)
Sec. 6653(b)(2)
Sec. 6661
1982
$  9,290.08
$  4,645.04
50 percent of
$  2,322.52
the interest due
on $  9,290.08
1983
14,938.35
7,469.18
50 percent of
3,734.59
the interest due
on $ 14,938.35
1984
58,949.35
29,474.68
50 percent of
14,737.34
the interest due
on $ 58,949.35
Respondent, in determining the deficiencies, relied upon information obtained from the public files of the United States District Court for the District of Massachusetts. Following a concession, [2] we must decide: (1) Whether any portion of the deficiencies or additions to tax determined for taxable years 1980 through 1984 should be invalidated because of petitioner's allegations that the evidence used to prepare the *81 notice of deficiency was obtained both as a result of an illegal search and seizure and as a result of an illegal disclosure of grand jury information; and (2) whether petitioner is estopped from contesting the additions to tax for fraud. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioner resided in Belchertown, Massachusetts when he filed his petition in this case. Petitioner did not file Federal income tax returns for taxable years 1980 and 1981. He did, however, file Federal income tax returns for taxable years 1982, 1983, and 1984. During the years 1980 through 1984, petitioner was engaged in the sale of narcotics. During that period of time, petitioner derived taxable income from the sale of narcotics. The Civil Forfeiture Litigation
On May 3, 1985, Edward K. O'Brien, a Supervisory Special Agent of the United States Drug Enforcement Administration (DEA), presented *82 five seizure warrants and a supporting affidavit to United States Magistrate Michael A. Ponsor. Mr. 0'Brien requested that the warrants be issued to facilitate a civil forfeiture seizure pursuant to 21 U.S.C. sec. 881(a)(6). [3] Magistrate Ponsor found that the affidavit established probable cause that all of petitioner's possessions were purchased with proceeds earned from the sale of illegal drugs. n4 Accordingly, warrants authorizing the seizure of petitioner's house, its contents, his safety deposit box, two bank accounts, and his girlfriend's automobile were issued that same day. On May 6, 1985, three additional warrants were issued authorizing the seizure of four investment accounts held in petitioner's name and a diamond ring. On May 31, 1985, a search warrant was issued authorizing the DEA to search petitioner's home and briefcase. The DEA eventually seized all of the property except for the diamond ring, which it was unable to locate. *83 Following the various searches and subsequent seizures of petitioner's property, petitioner filed a motion on June 4, 1985, with the United States District Court for the District of Massachusetts seeking the return of his property under rule 41(e) of the Federal Rules of Criminal Procedure. On June 12, 1985, petitioner moved for a preliminary injunction that would allow him to return to his home and make use of its contents pending resolution of his rule 41(e) motion. In support of his motion, petitioner argued that the seizure warrants violated his Fourth and Fifth Amendment rights, that the civil forfeiture statute was unconstitutional, and that he was being subjected to cruel and unusual punishment in violation of the Eighth Amendment. On June 20, 1985, the United States Attorney filed eight civil in rem forfeiture complaints with respect to the seizure warrants of May 3 and 6, 1985. The Government sought through the complaints to cause petitioner to forfeit his home, specified contents of his home, and a specified amount of currency and financial instruments that had been seized from accounts held in petitioner's name at a number of *84 financial institutions. On July 12, 1985, District Court Judge Frank H. Freedman issued a memorandum and order with respect to petitioner's motions requesting the return of the seized property under rule 41(e) and a preliminary injunction. The memorandum and order is styled In re Application of Kingsley, 614 F. Supp. 219 (D. Mass. 1985). The District Court denied petitioner's rule 41(e) motion, finding that Federal Rule of Criminal Procedure 41(e) does not apply in cases involving a civil forfeiture. In re Application of Kingsley, 614 F. Supp. at 221 n.1. The court then found that the Government acted properly in having the magistrate review the warrants procured for the seizure of petitioner's property in order to make a determination of probable cause. The court, however, criticized the Government for failing to file a civil forfeiture complaint at the same time that the seizure warrants were requested. Relying on United States v. Pappas, 613 F.2d 324 (1st Cir. 1979), the District Court concluded that the seizure of petitioner's property did not comply with the civil forfeiture procedure *85 set forth in 21 U.S.C. sec. 881(b) (1982) and was therefore warrantless under the statute. In re Application of Kingsley, 614 F. Supp. at 222-223. Having determined that the seizure of petitioner's property was not effected incident to the execution of a valid warrant, the District Court nevertheless refused to invalidate the entire seizure. In re Application of Kingsley, 614 F. Supp. at 223. Instead, the District Court concluded that petitioner was entitled to relief in the form of a preliminary injunction, finding that it was likely that petitioner would prevail at the civil forfeiture proceeding because the Government would be unable to establish probable cause under the statute to forfeit the seized property. [5]In re Application of Kingsley, 614 F. Supp. at 224. The District Court denied petitioner's request for a preliminary injunction, but allowed petitioner to make use of the contents of his house under a residency agreement. *86 Petitioner subsequently appealed the order issued by the District Court. The decision of the Court of Appeals was rendered on September 30, 1986, and is styled In re Application of Kingsley, 802 F.2d 571 (1st Cir. 1986). In commenting on the scope of the appeal, the First Circuit noted: What Kingsley is not appealing is significant. He has chosen not to appeal directly the denial of his Rule 41(e) motion, or even to request a remand to the district court for reconsideration of the merits of that motion. He seeks a preliminary injunction, on the grounds that he will likely succeed on the merits of the Rule 41(e) motion or in the government's civil forfeiture action. We, therefore, treat this appeal as Kingsley had has presented it to us, an appeal from a denial and a partial granting of a motion for the a preliminary injunction. Accordingly, the merits of Kingsley's numerous statutory and constitutional arguments raised below are not before us, except as to his likelihood of success on them. [In re Application of Kingsley, 802 F.2d at 577-578. Fn. ref. omitted.] The court went on to state: If this case continues to a trial on the civil *87 forfeiture proceedings, as the district court evidently contemplates, the issue of the legality of the seizures, potentially involving the constitutionality of the civil forfeiture statute, must be resolved. This appeal, however, does not ask us to resolve those issues. It seeks preliminary relief only. * * * [In re Application of Kingsley, 802 F.2d at 578.] The court went on to hold that the District Court's order requiring petitioner to post a bond as part of the residency agreement under which he was permitted to make use of his home and its contents did not constitute an abuse of discretion. In re Application of Kingsley, 802 F.2d at 579. On December 4, 1986, the Government filed a motion to dismiss the civil forfeiture action. The Government's motion to dismiss was prompted, at least in part, by a report and recommendation issued by Magistrate Ponsor on November 26, 1986. That report stated in part: The chronology of the Government's errors in prosecuting this case is as follows. First, in the investigative stage, the Government made improper use of materials obtained through the Grand Jury to assist its civil forfeiture effort. *88 Bank documents and other records were subpoenaed by the Grand Jury and turned over wholesale to law enforcement officers to be incorporated by them later as part of the application for civil seizure and forfeiture. While the question of whether a single Assistant United States Attorney prosecuting both civil and criminal sides of an investigation (as here) can use Grand Jury information in his civil efforts is still open under United States v. Sells Engineering, 463 U.S. 418, 431 n.15 (1983), there is no question under Fed. R. Crim. P. 6(e) 6 (e) that disclosure of Grand Jury information may be made to ancillary law enforcement personnel only as part of the effort to enforce the criminal law. The Government admits that this was done but argues that Grand Jury "material" does not include documentary evidence and that, in any case, the civil forfeiture action and the criminal prosecution are so closely related that restrictions against disclosure under Rule 6 should be relaxed. After consideration, neither of these the arguments holds water. [Emphasis in original.] On December 15, 1986, the District Court granted *89 the Government's motion to dismiss the civil forfeiture action with prejudice. Inasmuch as the court granted the Government's motion to dismiss, the District Court did not adopt or reject the findings contained in the magistrate's report. The Indictment
On July 30, 1984, a grand jury was empaneled for the United States District Court in Massachusetts. On November 26, 1985, the grand jury returned an indictment against petitioner. On July 28, 1986, the grand jury returned a 42-page superseding indictment against petitioner and 19 other individuals. The November 26, 1985, indictment was subsequently dismissed with regard to petitioner Michael J. Kingsley on August 15, 1986. The superseding indictment charged petitioner with one count of conspiring to distribute cocaine, one count of conspiring to distribute marijuana, ten counts of distributing cocaine, three counts of distributing marijuana, and one count of engaging in a continuing criminal enterprise. In addition to the above charges, petitioner was also charged with five counts of income tax evasion pursuant to 26 U.S.C. sec. 7201 (1982) and one count of conspiring to commit income tax offenses. *90 The indictment charged that from April 1976 through July 1985, petitioner and other named individuals conspired to buy, sell, and distribute large quantities of cocaine and marijuana for profit throughout the western Massachusetts area. Petitioner was identified in the indictment as the head of the organization. As part of the two drug conspiracy counts, the indictment charges that petitioner and Kimberly Reynolds, petitioner's companion during the time period covered by the indictment and now his wife, participated in a scheme to conceal and otherwise launder the profits earned from the sale of illegal drugs. According to the indictment, petitioner made a series of cash loans to bar owners who repaid a portion of the loans by making periodic payments purporting to be weekly salaries to petitioner and Ms. Reynolds. Count sixteen of the indictment charges petitioner with engaging in a continuing criminal enterprise. The indictment states in pertinent part: Beginning on or about March of 1977, and continuing thereafter through on or about May 3, 1985, within the District of Massachusetts and elsewhere, MICHAEL J. KINGSLEY the defendant, unlawfully, wilfully and knowingly *91 did engage in a continuing criminal enterprise in that he did violate Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A) and 846, as alleged in Counts one through fourteen of this Indictment, which violations were part of a continuing series of violations of those statutes undertaken by defendant Michael J. Kingsley, in concern concert with at least five other persons with respect to whom defendant Michael J. Kingsley occupied a position of organizer, supervisor or manager, and from which continuing series of violations he obtained substantial income and resources, all in violation of Title 21, United States Code, Section 848. Count sixteen of the indictment further charges that upon conviction of engaging in a continuing criminal enterprise, petitioner must forfeit all profits and proceeds of profits obtained through participation in the illegal enterprise. The indictment indicates that upon conviction, petitioner would forfeit his personal residence, certain items of personalty contained in or about his residence, approximately $ 130,000 in United States currency, the right to recover approximately $ 87,850 loaned to a number of individuals, miscellaneous *92 financial instruments worth approximately $ 70,000, a lawn tractor, a stamp collection worth approximately $ 4,000, and a diamond ring appraised at $ 9,500. The criminal forfeiture charge set forth in the indictment encompassed many of the assets subject to forfeiture in the civil forfeiture case. The five counts of tax evasion cover the years 1980 through 1984. The indictment charges that during calendar year rear 1980, petitioner received taxable income of approximately $ 28,509.00 and that during 1981, he received taxable income of approximately $ 95,142.35. For both of these years petitioner failed to file Federal income tax returns. For taxable years 1982, 1983, and 1984, the indictment charges petitioner with filing false and fraudulent income tax returns. Specifically, the indictment charges that petitioner underreported his 1982 income by $ 23,434.33. For 1983, the indictment charges that petitioner underreported his income by approximately $ 38,106.46 and for 1984, charges that petitioner failed to report $ 126,887.87 in income. The Internal Revenue Service
In 1986, Vincent C. Baldasare was employed by the Internal Revenue Service (IRS) as a group manager *93 in the examination division. Mr. Baldasare was in charge of an examination division group in the Special Enforcement Program. This group was charged with the responsibility of examining the civil tax liability of taxpayers who may be involved or engaged in criminal enterprises. As group manager, Mr. Baldasare was responsible for monitoring the work of a group of revenue agents who examine tax returns. On December 10, 1986, Mr. Baldasare was attending a week-long computer class being held in a Boston, Massachusetts office building in which the IRS maintains offices. While in class, Mr. Baldasare received a message from David Robeson, the assistant chief of the IRS examination division in Boston, Massachusetts, instructing Mr. Baldasare to telephone Henry Rigali, the Assistant United States Attorney in Springfield, Massachusetts. The message was received sometime around 10:30 or 11:00 in the morning. Mr. Baldasare left the comuter computer class, returned to his office, and telephoned Mr. Rigali. Mr. Baldasare had not previously dealt with Mr. Rigali. Mr. Rigali told Mr. Baldasare that the Government would be releasing substantial assets to a taxpayer in the next few days and *94 suggested that the examination division might be interested in determining whether any potential tax liabilities exist. As part of the conversation, Mr. Rigali advised Mr. Baldasare that the DEA was in control of the taxpayer's assets and he identified the taxpayer as Michael J. Kingsley. During their conversation, Mr. Baldasare and Mr. Rigali discussed the possibility that the IRS might proceed with a jeopardy assessment against the taxpayer. Mr. Rigali did not recommend recommended to Mr. Baldasare that the IRS make a jeopardy assessment. Instead, he only suggested that the IRS might want to look at the public records relating to Michael J. Kingsley that were going to be filed at the District Court. It was one of Mr. Baldasare's responsibilities as group manager to make certain that no grand jury material was used to determine a deficiency. Mr. Baldasare did not participate in the grand jury investigation of petitioner. Following his conversation with Mr. Rigali, Mr. Baldasare called Edward Carr, the group manager of the IRS examination division in Springfield, Massachusetts. Mr. Carr was unavailable and Mr. Baldasare instead spoke with the acting group manager, Thomas Murphy. *95 Mr. Baldasare reiterated his previous conversation with Mr. Rigali and told Mr. Baldasare Murphy that "there may be a taxpayer by the name of Michael Kingsley in the Springfield area in which we may have an interest in determining whether he [has] any outstanding tax liability to the Internal Revenue Service." Mr. Baldasare then asked Mr. Murphy to assign a revenue agent to examine the public records on file at the District Court building in Springfield, Massachusetts, to determine whether there was any information relating to Mr. Kingsley's potential tax liability. Mr. Murphy assigned revenue agent Richard Paluck to the case. Following his conversation with Mr. Murphy, Mr. Baldasare returned to the computer class and asked revenue agent Gerald Killion to step out of the class. Mr. Killion had been employed by the IRS for over 20 years. As a revenue agent, Mr. Killion examined tax returns to determine the taxpayer's correct tax liability. Mr. Baldasare told Mr. Killion that there was a possibility that a recommendation for jeopardy assessment would have to be prepared within the next day or two. Mr. Baldasare also told Mr. Killion that a revenue agent was going to review *96 the District Court records for information. Mr. Baldasare did not tell Mr. Killion of his earlier conversation with Mr. Rigali. Mr. Killion was assigned to most of the jeopardy and termination assessments in the Boston District. Mr. Killion was not involved in the grand jury investigation of petitioner. At the time Mr. Baldasare advised Mr. Killion about the possible jeopardy assessment, Mr. Killion had never heard of Michael J. Kingsley. Mr. Killion understood that Mr. Paluck was to go to the District Court, retrieve the appropriate records, and mail them to him. On December 10 and 11, 1986, Mr. Paluck obtained documents regarding petitioner from the public files of the District Court. Mr. Paluck mailed these documents to Mr. Killion on December 10 and 11, 1986. Mr. Paluck did not participate in the grand jury investigation of Michael J. Kingsley. Mr. Killion started preparing the recommendation for jeopardy assessment on December 11, 1986, based in part on the documents Mr. Paluck had obtained from the court files in Springfield, Massachusetts. These documents consisted of a copy of the superseding indictment, copies of six affidavits filed by DEA agent O'Brien, a copy *97 of an affidavit of IRS special agent Robert Howe, two summary charts listing petitioner's yearly expenditures, and a copy of the search warrant issued on May 31, 1985. Some of these documents were stamped "GOVERNMENT EXHIBIT," but Mr. Killion had no idea what the exhibit stamp referenced. While preparing the recommendation for jeopardy assessment, Mr. Killion called the IRS office in Springfield, Massachusetts to ascertain petitioner's marital status and address. Mr. Killion spoke with Kenneth Teele, an IRS special agent assigned to the criminal investigation division in Springfield, Massachusetts. At the time of the phone call, Mr. Teele was assigned to the grand jury investigating petitioner and fell within the Federal Rule of Criminal Procedure 6(e)(3)(A)(ii) description of "government personnel * * * deemed necessary * * * to assist an attorney for the government in the performance of such attorney's duty to enforce federal criminal law." Mr. Killion did not ask to speak with Mr. Teele; he was simply connected with him. Mr. Killion did not know, and Mr. Teele did not tell him, that he (Mr. Teele) was assigned to assist in the grand *98 jury investigation. Mr. Killion assumed that a grand jury was involved in the investigation of petitioner. He based this assumption on his understanding that most drug cases are handled by a grand jury. Mr. Killion did not prepare the notice of deficiency involved in this case. His revenue agent's report, however, would have been used for that purpose. Mr. Baldasare reviewed and approved the jeopardy assessment on December 12, 1986. In a memorandum dated December 12, 1986, Mr. Paluck wrote that he obtained several documents on December 10th and another document on December 11th from the clerk of the District Court in Springfield, Massachusetts. The information obtained on December 10, 1986, was mailed to Mr. Killion at approximately 4:00 p.m. that same day by express mail. The information obtained on December 11, 1986, was mailed to Mr. Killion under separate cover. On December 12, 1986, Mr. Paluck was called by Charles Maurer, a District Counsel attorney in Boston, Massachusetts, who asked him where the documents were obtained. Mr. Paluck told Mr. Maurer that all the documents were obtained from the clerk of the court. The Rule 6(e) Disclosure Statements
On *99 or about May 29, 1985, Mr. Rigali caused to be filed with the District Court a notice of disclosure pursuant to rule 6(e)(3)(B) [6] of the Federal Rules of Criminal Procedure. The notice purports to list the names of Government personnel to whom disclosure was necessary under rule 6(e)(3)(A)(ii) with respect to the grand jury investigating petitioner. Included on the list were DEA agent Edward K. O'Brien and IRS special agent Kenneth Teele. On September 23, 1985, Mr. Rigali wrote again to Chief Judge Andrew A. Caffrey of the District Court to provide notice and certification pursuant to rule 6(e)(3)(B). On April 1, 1986, a third letter was sent to Chief Judge Caffrey. Among the names added to the list of names on the disclosure list was Vincent Baldasare. Mr. Baldasare never actually participated in petitioner's grand jury investigation and no grand jury information was disclosed to him. He understood, however, that it was normal procedure to list the names of IRS supervisors when one of their agents is assigned to a grand jury case. *100 The Public Disclosure of Documents
On December 10, 1986, the Government filed a document in petitioner's criminal case titled "DISCLOSURES OF WITNESS STATEMENTS, SUMMARY DOCUMENTS AND OTHER MATERIALS." The document contains a stamp indicating that it was filed with the clerk's office of the District Court at 4:00 p.m. The document purports to disclose to petitioner the testimony of 21 witnesses who testified before the grand jury investigating petitioner. The transcripts of the grand jury testimony were not attached to the document filed with the clerk on December 10, 1986. However, attached to the disclosure document that was in the District Court's public files was a list of proposed trial witnesses, a summary chart of petitioner's yearly expenditures, a summary chart of petitioner's income tax violations, and a document detailing adjustments to the previously discussed expenditure schedule. The records of the District Court indicate that the disclosure document and attachments were filed in response to petitioner's discovery motions in the criminal case. The Criminal Proceeding
On October 24, 1986, petitioner filed a motion in District Court seeking the *101 suppression and exclusion from evidence in the criminal proceedings of all items seized by Government agents pursuant to the warrants issued on May 3 and 6, 1985. In his motion, petitioner also sought the suppression and exclusion of all evidence obtained through the use of grand jury materials in violation of the secrecy provisions of rule 6(e). As part of his motion, petitioner incorporated the grounds set forth in his motion filed June 4, 1985, seeking the return of his property in the civil forfeiture proceeding under rule 41(e) of the Federal Rules of Criminal Procedure. In a separate memorandum filed with his motion to suppress and exclude evidence, petitioner discussed the legal authority supporting his motion. On November 24, 1986, the Government filed with the District Court its opposition to petitioner's motion to suppress evidence. Recognizing the similarity between the civil and criminal forfeiture proceedings, the Government incorporated by reference its opposition to petitioner's rule 41(e) motion filed in the civil forfeiture proceedings. The Government argued that even if the court should determine that the Fourth Amendment *102 or rule 6(e) had been violated, the evidence should not be suppressed. In support of this argument, the Government argued that the good faith reliance of its agents on the seizure warrant issued by the magistrate brings their conduct within the exception to the exclusionary rule recently recognized by the Supreme Court. [7] The Government also argued that "even assuming that the exclusionary rule is applicable and the conduct of the government agents in seizing the defendant's property is not excused by their 'good faith' reliance on the Magistrate's warrant, the Government will demonstrate that all evidence it intends to introduce at trial was lawfully obtained through untainted and completely independent sources, separate and apart from its civil seizure of Kingsley's property." On December 18, 1986, the *103 Government filed with the District Court a document titled "Government's proof of independent source and inevitable discovery of trial evidence and addendum to opposition to Kingsley's motions to suppress." Through this document, the Government sought to demonstrate to the District Court that the evidence to be introduced during the criminal trial was secured from sources completely independent of any taint. The Government began by noting that prior to the first search of petitioner's home on May 3, 1985, a significant amount of evidence concerning petitioner's drug-trafficking network had already been obtained. Specifically, on May 1, 1985, the grand jury investigating petitioner issued 23 subpoenas directed at uncovering evidence of petitioner's financial dealings, expenditures, and money laundering. With the exception of one of these subpoenas, all of the subpoenas were served on or before May 2, 1985. The Government also pointed out that Mr. O'Brien's affidavit of May 3, 1985, provided detailed information concerning petitioner's drug-trafficking activities, his sources of income, his expenditures, his assets, and his money laundering scheme. The Government conceded, however, *104 that it had no independent source of evidence for seven receipts found in petitioner's briefcase. Respondent has conceded the adjustments in the notice of deficiency which were based on this inadmissable evidence. (See note 2, supra.) On December 19, 1986, Judge Freedman issued an order with respect to petitioner's motion to dismiss the superseding indictment. In denying petitioner's motion, the court stated: As far as the argument that the government's use of grand jury materials in the civil forfeiture case violates Rule 6(e) of the Federal Rules of Criminal Procedure, the Court finds that dismissal of the indictment is not the proper remedy. The dismissal of the civil action, or perhaps suppression, represent appropriate remedies for this type of violation. The Court is also satisfied, in light of the portion of grand jury minutes submitted by the government, that the essential function of the grand jury was not ursurped by the prosecution. [Fn. ref. ommitted.] On January 6, 1987, Judge Freedman issued a memorandum and order with respect to petitioner's previously filed motion to suppress and exclude evidence. Commenting *105 on the eight seizure warrants obtained on May 3 and 6, 1985, the District Court stated that: because no exigent circumstances were present, because the warrant issued by the Magistrate did not comply with the Fourth Amendment's requirements of particularity and probable cause with respect to the contents of Kingsley's home, and because the government failed to make use of the less restrictive provisions of the criminal forfeiture statute, the Court must conclude that the seizures without process were improper and unlawful. It follows from this that unless the government can establish good faith by the agents or demonstrate independent source or inevitable discovery, suppression of the fruits of the original seizures must be ordered. * * * The court next examined whether the good faith exception to the exclusionary rule should apply to prevent suppression of the evidence. After reviewing the Supreme Court decisions in Massachusetts v. Sheppard, 468 U.S. 981 (1984), and United States v. Leon, 468 U.S. 897 (1984), the District Court found that the agents involved in the seizure of petitioner's property did not act in good faith. [8] Accordingly, *106 the court found that the good faith exception to the exclusionary rule was inapplicable. The court concluded by stating that the tainted evidence would be suppressed unless the Government could establish either that it had independent sources for the evidence or that its discovery of the evidence would have been inevitable. n9 *107 The Guilty Plea
On January 9, 1987, petitioner pleaded guilty to all 22 counts of the indictment pursuant to a plea agreement. [10] During the plea hearing the following transpired: THE COURT: All right. Then are you pleading, Mr. Kingsley, guilty to Counts 1 through 21, Count 16 less paragraphs 1, 2, 16, 17, and 18 under the forfeiture statute * * * and Count 23 because you did in fact do what is charged in those acts in the indictment? DEFENDANT KINGSLEY: Except for the tax charges, I agree. I admit I evaded taxes, but I don't agree with the figures. THE COURT: That's one of these counts? MR. WALKER [representing Mr. Kingsley]: Your Honor, all the defendant is trying to say is that he admits to all the offenses, but *108 by doing so, he is not admitting to the figures in the tax counts that are alleged in the tax counts. He admits guilt for those years, but he is not, for example, in those counts -- THE COURT: What you are saying is he in effect agrees he owes some money, but the amount would be determined between IRS and him at a later time? DEFENDANT KINGSLEY: Yes, your Honor. MR. WALKER: That's correct, your Honor. Later during the plea hearing, the following discussion ensued: THE COURT: * * * To counsel, please. Have you advised your respective defendants concerning the legality or the admissibility of any statements or confessions or other evidence the government has against either him or her? MR. KELLY: [representing Kimberely Reynolds] I certainly have. THE COURT: Have you discussed the matter fully, Mr. Walker? MR. WALKER: Yes, I have discussed it fully. MR. KELLY: Yes, sir. THE COURT: Are they pleading guilty because of any illegally obtained evidence in the possession of the government; Mr. Kelly? MR. KELLY: Not to my knowledge, your Honor. We do contest some of the evidence, obviously, that was in possession, and that hadn't been resolved yet, but the plea of *109 guilty is being tendered in the face of other evidence that the government has available to it. THE COURT: All right. Mr. Walker, is your client pleading guilty because of any illegally obtained evidence in the possession of the government, or has your client told you he's pleading guilty because of any illegally obtained evidence in the possession of the government? MR. WALKER: That is not the reason that the defendant is pleading guilty, your Honor, and I incorporate Mr. Kelly's remarks. At the close of this discussion, Chief Judge Freedman [11] asked Mr. Rigali to discuss what admissible evidence the Government would have offered against Michael J. Kingsley had the case proceeded to trial. Mr. Rigali began by identifying members of petitioner's drug-trafficking network who would have been called to testify against petitioner. Next, Mr. Rigali discussed evidence indicating that petitioner dealt in large quantities of marijuana and cocaine over a period of approximately nine years. Mr. Rigali also detailed petitioner's role as organizer of the drug-trafficking network. *110 In support of the continuing criminal enterprise charge, Mr. Rigali indicated that the Government was prepared to identify approximately 25 individuals who distributed drugs for petitioner. Furthermore, to establish that petitioner derived substantial income from the sale of illegal narcotics, Mr. Rigali indicated that the Government was prepared to establish that petitioner spent approximately $ 725,000 from 1980 through 1984. The Government was also prepared to provide information indicating that petitioner was placed on the payroll of a Massachusetts bar owned by his friends in order to provide petitioner with a seemingly legitimate source of income. At no time did petitioner's attorney object to the factual information stated by Mr. Rigali and at no time did petitioner's attorney attempt to rebut the information presented to the court. At the close of Mr. Rigali's presentation, Chief Judge Freedman indicated that the court was satisfied with the facts as presented. OPINION Petitioner contends that the deficiencies in issue were determined based on evidence that was derived from an unlawful search and seizure. Petitioner also contends that the deficiencies were based *111 on grand jury information that was illegally obtained in violation of rule 6(e) of the Federal Rules of Criminal Procedure. Because of these alleged illegalities, he argues that the notice of deficiency is invalid. Alternatively, petitioner argues that the same alleged unlawful Government actions eliminate the normal presumption of correctness which attaches to a notice of deficiency, thereby shifting the burden of going forward with evidence to respondent. Petitioner contends that he is entitled to a judgment in his favor because respondent failed to introduce any admissible evidence to support the deficiencies. Rather than introducing evidence to establish that the deficiencies set forth in the statutory notices are incorrect, petitioner has chosen to rely on the strength of these arguments. We begin our analysis by noting that the purpose of a proceeding before the Tax Court is to determine a taxpayer's correct tax liability. We base our determination solely on the merits of the case and not on any previous record developed at the administrative level. Greenberg's Express, Inc. v. Commissioner, 62 T.C. 324, 328 (1974). *112 For this reason, the Court will generally not look behind a statutory notice of deficiency to examine the propriety of the Commissioner's motives in making the determination. Petzoldt v. Commissioner, 92 T.C. 661, 688 (1989); Shriver v. Commissioner, 85 T.C. 1, 3 (1985); Greenberg's Express, Inc. v. Commissioner, supra at 327. The exclusionary rule is a judicially created remedy which results in the suppression of evidence which has been derived from an illegal search or seizure under the Fourth Amendment. Mapp v. Ohio, 367 U.S. 643 (1961); Weeks v. United States, 232 U.S. 383 (1914). In United States v. Janis, 428 U.S. 433 (1976), the Supreme Court discussed the scope of the exclusionary rule in civil tax cases. The Court stated that if illegally seized evidence could not be used in a civil tax case, then the result would be "a 'naked' assessment without any foundation whatsoever," and that "proof that an assessment is utterly without foundation is proof that it is arbitrary and erroneous." United States v. Janis, supra at 441-442 (emphasis in original). *113 Proof that illegally obtained and therefore inadmissible evidence was used in the determination of a deficiency, however, will not void the statutory notice. Graham v. Commissioner, 82 T.C. 299, 310 (1984), affd. 770 F.2d 381 (3d Cir. 1985); Riland v. Commissioner, 79 T.C. 185, 207 (1982); Greenberg's Express, Inc. v. Commissioner, supra at 328; Suarez v. Commissioner, 58 T.C. 792, 814 (1972). Instead, a showing that a statutory notice of deficiency was without any foundation and arbitrary has the effect of shifting to the Commissioner the burden of going forward with the evidence. Zuhone v. Commissioner, 883 F.2d 1317, 1325 (7th Cir. 1989), affg. a Memorandum Opinion of this Court; Clapp v. Commissioner, 875 F.2d 1396, 1403 (9th Cir. 1989); Berkery v. Commissioner, 91 T.C. 179, 186 (1988), affd. without published opinion 872 F.2d 411 (3d Cir. 1989); Kluger v. Commissioner, 91 T.C. 969, 976-977 (1988); Cozzi v. Commissioner, 88 T.C. 435, 444 (1987); Kluger v. Commissioner, 83 T.C. 309, 310 n.1 (1984). *114 The burden of proof, however, remains on petitioner. United States v. Rexach, 482 F.2d 10, 16 (1st Cir. 1973); Kluger v. Commissioner, 91 T.C. at 976, 977. The Illegal Search
It is apparent from the record that petitioner expended a considerable amount of time and effort challenging the seizure of his property which occurred in May 1985. It is also apparent from the record that both the United States District Court for the District of Massachusetts and the First Circuit Court of Appeals were troubled by the conduct of the Government agents who seized petitioner's property. Based on the record, we find that the items seized from petitioner in May 1985 were illegally seized. For purposes of this opinion, we will assume that the information obtained in those seizures must be suppressed in this case unless respondent can demonstrate that the evidence is admissible pursuant to an exception to the exclusionary rule. See Nix v. Williams, 467 U.S. 431 (1984); United States v. Silvestri, 787 F.2d 736 (1st Cir. 1986); United States v. Bienvenue, 632 F.2d 910 (1st Cir. 1980). Petitioner pleaded *115 guilty to criminal narcotics and tax evasion charges. Three days prior to the guilty plea, the District Court released its memorandum and order finding that unless the Government could establish an independent source or establish that the illegally obtained evidence would have been discovered inevitably, the illegally obtained evidence would be suppressed. We know from the plea hearing that petitioner did not plead guilty because of illegally obtained evidence. Indeed, at the plea hearing petitioner's attorney stated that the plea was being tendered based on admissible evidence that the Government had available. We must therefore conclude that the Government had admissible evidence sufficient to prove the criminal charges against petitioner. [12]
*116 The indictment to which petitioner pleaded guilty contained income tax evasion charges for each of the years involved. While petitioner did not agree to the amounts of tax alleged in the indictment (which correspond closely with those in the deficiency notice), the guilty plea establishes that petitioner attempted to evade his taxes and that an additional tax was due and owing for each year. Sansone v. United States, 380 U.S. 343, 351 (1965); United States v. Johnson, 319 U.S. 503, 517-518 (1943). The indictment to which petitioner pleaded guilty also charged petitioner with 16 narcotics offenses. The indictment was fact specific, setting forth detailed charges regarding petitioner's drug-trafficking activities and financial transactions during the years in issue here. The specific narcotics charges support the magnitude of the amount of tax allegedly evaded. Mr. Rigali commented at the plea hearing, without objection from petitioner, that during the years in issue petitioner's expenditures totalled approximately $ 725,000. As part of his guilty plea, petitioner also forfeited over $ 250,000 in assets. The predicate for the forfeiture was *117 that these assets were acquired with income earned through drug trafficking. [13]
In addition to petitioner's guilty plea and acknowledgment that the charges in the indictment were supported by admissible evidence, there were other facts showing that the Government had evidence untainted by the illegal searches that occurred in May 1985. Prior to the first search of petitioner's home on May 3, 1985, the Government possessed a significant amount of evidence concerning petitioner's drug-trafficking network. On May 1, 1985, the grand jury investigating petitioner issued 23 subpoenas aimed at uncovering evidence of petitioner's financial dealings, expenditures, and money laundering. With the exception of one of these subpoenas, all were served on or before May 2, 1985. An examination of the names of the subpoenaed witnesses makes it apparent that prior to the May 3, 1985, seizure, the Government *118 already possessed significant evidence concerning petitioner's criminal activities and financial dealings upon which the notice of deficiency was based. Mr. O'Brien's affidavit of May 3, 1985, provides additional information concerning petitioner's drug trafficking, his sources of income, his expenditures, his assets, and his money laundering activities. The affidavit identified potential witnesses and identified individuals who had supplied Government investigators with information. The grand jury subpoenas and Mr. O'Brien's affidavit lead us to conclude that at the time the Government seized petitioner's property, it either had information upon which to base deficiency determinations or inevitably would have discovered that information. [14] The information possessed by the Government prior to the improper searches and seizures, coupled with petitioner's guilty plea to the multiple count indictment and his admission that there was admissible evidence to support the charges, leads us to find that the deficiency determinations in this case were not based upon inadmissible evidence. n15 *119 The Alleged Violation of Rule 6(e)
Petitioner contends that the documents retrieved from the public files of the District Court constitute "matters occurring before the grand jury." Inasmuch as these materials were obtained by respondent's agents without first obtaining an order of the District Court, petitioner argues that respondent's use of the documents violates the secrecy provisions of rule 6(e) of the Federal Rules of Criminal Procedure. Petitioner also argues that Mr. Rigali violated rule 6(e) when he telephoned Mr. Baldasare to suggest that the IRS might want to examine the records that were about to be filed with the District Court. Rule 6(e)(2) imposes a general rule of secrecy regarding matters occurring before a grand jury. Rule 6(e)(3) provides specific procedures for the disclosure of grand jury information. Rule 6(e) provides in part: (e) Recording and disclosure of proceedings * * * (2) General Rule of Secrecy. A grand juror, an interpreter, a stenographer, an operator of a recording device, a typist who transcribes recorded testimony, an attorney for the government, or any person to whom disclosure is made *120 under paragraph (3)(A)(ii) of this subdivision shall not disclose matters occurring before the grand jury, except as otherwise provided for in these rules. No obligation of secrecy may be imposed on any person except in accordance with this rule. A knowing violation of rule 6 may be punished as a contempt of court. (3) Exceptions. (A) Disclosure otherwise prohibited by this rule of matters occurring before the grand jury, other than its deliberations and the vote of any grand juror, may be made to -- (i) an attorney for the government for use in the performance of such attorney's duty; and (ii) such government personnel (including personnel of a state or subdivision of a state) as are deemed necessary by an attorney for the government to assist an attorney for the government in the performance of such attorney's duty to enforce federal criminal law. (B) Any person to whom matters are disclosed under subparagraph (A)(ii) of this paragraph shall not utilize that grand jury material for any purpose other than assisting the attorney for the government in the performance of such attorney's duty to enforce federal criminal law. An attorney for the government shall promptly provide *121 the district court, before which was impaneled the grand jury whose material has been so disclosed, with the names of the persons to whom such disclosure has been made, and shall certify that the attorney has advised such persons of their obligation of secrecy under this rule. When specific IRS personnel are assigned to assist a prosecuting attorney in a grand jury investigation, they are supposed to function only for criminal investigative purposes. Information gathered by the grand jury, including information disclosed to specific IRS personnel under rule 6(e)(3)(A)(ii), is subject to the requirement of secrecy. Absent a court order under rule 6(e)(3)(C)(i), information disclosed pursuant to rule 6(e)(3)(A)(ii) may not be further disclosed and may not be used for any purpose other than to assist the attorney for the Government in the criminal case. United States v. Sells Engineering, Inc., 463 U.S. 418 (1983). Rule 6(e), however, was not intended to cloak individuals under grand jury investigation in a protective mantle of concealment. United States v. (Under Seal), 783 F.2d 450 (4th Cir. 1986). Instead, it was intended to protect against *122 disclosures "of what is said or what takes place in the grand jury room." United States v. Interstate Dress Carriers, Inc., 280 F.2d 52, 54 (2d Cir. 1960); In re Grand Jury Investigation (SCI), 630 F.2d 996, 1000 (3d Cir. 1980). Rule 6(e) does not shield for all time the revelation of information that was previously presented to a grand jury. In re Grand Jury Matter (Cantina), 682 F.2d 61, 64 (3d Cir. 1982); Bell v. Commissioner, 90 T.C. 878, 903 (1988). In this regard, the Second Circuit has stated: it is not the purpose of the Rule to foreclose from all future revelation to proper authorities the same information or documents which were presented to the grand jury. Thus, when testimony or data is sought for its own sake -- for its intrinsic value in the furtherance of a lawful investigation -- rather than to learn what took place before the grand jury, it is not a valid defense to disclosure that the same information was revealed to a grand jury or that the same documents had been, or were presently being, examined by a grand jury. * * * [United States v. Interstate Dress Carriers, Inc., supra at 54.] *123 Respondent contends that the documents retrieved from the District Court were public records and that, therefore, no court order was required in order to make use of or inspect the documents. Respondent also contends that Mr. Rigali did not disclose a "matter occurring before the grand jury" during his conversation with Mr. Baldasare. We agree with respondent. The information upon which respondent based his deficiency determinations was obtained from the District Court's public files. This information consisted of the superseding indictment, a number of affidavits, two summary charts listing petitioner's yearly expenditures, and a copy of a search warrant. With the exception of the superseding indictment, all of this information was disclosed by the Government through a disclosure memorandum filed with the District Court on December 10, 1986. We find nothing improper with this disclosure procedure. When matters which had previously been presented before the grand jury appropriately become part of the public record, the procurement of a copy of the public record and the use of the information contained therein in the formulation of a statutory notice is reasonable and proper *124 and not a violation of rule 6(e). Bell v. Commissioner, supra at 904. As for the superseding indictment, we point out that an indictment returned in open court is a public record available for inspection. Bell v. Commissioner, supra at 904. Although the record is silent as to how the superseding indictment was returned, we note that rule 6(f) of the Federal Rules of Criminal Procedure states that an "indictment shall be returned by the grand jury to a federal magistrate in open court." Since the superseding indictment was obtained from the public files of the District Court, we have no reason to believe that this procedure was not followed here. We therefore hold that rule 6(e) does not apply in this instance to prohibit the use of the superseding indictment by IRS employees. Bell v. Commissioner, supra.
We also find unpersuasive petitioner's argument concerning Mr. Rigali's alleged violation of rule 6(e). In United States v. John Doe, Inc. I, 481 U.S. 102 (1987), the Supreme Court indicated that "it seems plain to us that Rule 6(e) prohibits those with information *125 about the workings of the grand jury from revealing such information to other persons who are not authorized to have access to it under the Rule." United States v. John Doe, Inc. I, supra at 108. Rule 6(e), however, does not serve to prevent for all time the revelation of information that was previously presented before a grand jury. Petitioner does not contend that the filing of the disclosure memorandum on December 10, 1986, was an illegitimate or improper filing in connection with petitioner's criminal case. Indeed, it appears to have been filed in response to the District Court's order based on petitioner's discovery motion. Disclosing the fact that a document was about to be publicly filed, without disclosing its contents, did not disclose secret grand jury information and did not violate rule 6(e). Mr. Rigali did not divulge to Mr. Baldasare the names of witnesses or the content of any testimony, documents, or other matters that had been presented to the grand jury. Although Mr. Rigali identified petitioner as being of interest to the IRS, we do not believe that this identification disclosed any secret grand jury matter since petitioner was already the *126 subject of a public indictment and other litigation relevant to his narcotics activities. [16]
When Mr. Rigali spoke to Mr. Baldasare on December 10, 1986, Mr. Rigali knew that information that had previously been presented to the grand jury would be made public through the filing of a disclosure statement. By alerting respondent's agent to the fact that potentially useful information would be available in the District Court's files, Mr. Rigali did not identify such information as having been presented to the grand jury and he did not disclose anything that had been presented to the grand jury. Mr. Rigali may have been prompted by his personal knowledge of information that had previously been presented to the grand jury, but *127 he did not disclose any grand jury information. A prosecutor's use of grand jury information for a civil purpose, absent a disclosure, does not violate rule 6(e). United States v. John Doe, Inc. I, supra.We therefore find that Mr. Rigali did not violate rule 6(e) when he informed Mr. Baldasare that information concerning petitioner was about to become part of the public files of the District Court. [17]
Petitioner argues that even if we find that respondent did not rely on improperly obtained evidence in calculating the notice of deficiency, petitioner should not be *128 precluded, based on his guilty plea, from denying that the deficiencies are attributable to fraud. Petitioner relies on the fact that he did not admit to the accuracy of the "taxable income" and "tax due" figures set forth in the superseding indictment. The indictment to which petitioner pleaded guilty charged petitioner with five counts of tax evasion under 26 U.S.C. sec. 7201. Specifically, the indictment charged that for calendar years 1980 and 1981, petitioner did willfully and knowingly attempt to evade and defeat income taxes by failing to file income tax returns. For calendar years 1982, 1983, and 1984, the indictment charged that petitioner did willfully and knowingly attempt to evade and defeat a large part of income taxes due and owing by signing and mailing false and fraudulent income tax returns. A criminal conviction based on an indictment charging a willful attempt to evade or defeat taxes necessarily carries with it the ultimate factual determination that the resulting deficiency was due to fraud. Gray v. Commissioner, 708 F.2d 243 (6th Cir. 1983), affg. a Memorandum Opinion of this Court; Fontneau v. United States, 654 F.2d 8 (1st Cir. 1981); *129 Amos v. Commissioner, 43 T.C. 50, 55 (1964), affd. 360 F.2d 358 (4th Cir. 1965); Moore v. United States, 360 F.2d 353, 355 (4th Cir. 1965); Tomlinson v. Lefkowitz, 334 F.2d 262, 265 (5th Cir. 1964); Arctic Ice Cream Co. v. Commissioner, 43 T.C. 68, 74-76 (1964). This finding of fraud is necessitated by the fact that the term "willfully," as used in 26 U.S.C. sec. 7201, comprehends a specific intent to evade or defeat the payment of tax. United States v. Pomponio, 429 U.S. 10, 12-13 (1976); Spies v. United States, 317 U.S. 492, 498 (1943); United States v. Murdock, 290 U.S. 389, 398 (1933). For purposes of applying the doctrine of collateral estoppel regarding the fraud issue, there is no difference between a conviction based on a guilty plea and a conviction after a trial on the merits. Gray v. Commissioner, supra; Plunkett v. Commissioner, 465 F.2d 299, 305-307 (7th Cir. 1972), affg. a Memorandum Opinion of this Court; Arctic Ice Cream Co. v. Commissioner, supra at 75. *130 Indeed, a plea of guilty means "guilty as charged in the indictment," Arctic Ice Cream Co. v. Commissioner, supra at 75, and such a plea is a conclusive judicial admission of all of the essential elements of the offenses charged in the indictment. Kercheval v. United States, 274 U.S. 220, 223 (1927); Artic Ice Cream Co. v. Commissioner, supra.
After taking into account the concessions respondent made prior to trial, we sustain respondent's determination. Decision will be entered under Rule 155. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended and in effect for the years in issue.↩
2. Respondent concedes that the unreported income determined in the notice of deficiency should be reduced $ 228.75 for 1980, $ 694.94 for 1983, and $ 439.60 for 1984.↩
3. 21 U.S.C. sec. 881(a)(6) (1982) provides in pertinent part: (a) The following shall be subject to forfeiture to the United States and no property right shall exist, in them: * * * (6) All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter * * *. n4 The Government contended that petitioner's only source of income during the preceding ten years had been from the sale of illegal narcotics.↩
5. The District Court specifically noted that the Government must establish that a "substantial connection exists between the property to be forfeited and the criminal activity defined refined by the statute." In re Application of Kingsley, 614 F. Supp. 219, 224 (D. Mass. 1985). The court went on to state: Here, the government's theory is that everything petitioner owns is traceable to a drug transaction because the affidavit shows that is exclusively how petitioner has supported himself for at least the last ten years. The Court agrees with the Magistrate that the affidavit provides probable cause to believe that narcotics activity is and has been for some time petitioner's sole source of income and that it is with this money that petitioner purchased his home. However, the Court has difficulty with tracing the alleged narcotics activity to the undifferentiated "contents" of petitioner's residence. Specifically, the affidavit does not give a clue as to which , if any, of the seized items petitioner himself purchased or, if the petitioner did purchase the items, whether he purchased them within the last ten years during the time of his alleged narcotics activity or earlier. Thus the Court is unable to say at this time that the government could meet its burden of proving at the forfeiture proceeding that there is probable cause to believe the "contents" of petitioner's residence are traceable to drug transactions. The Court must therefore conclude that petitioner has demonstrated the requisite likelihood of success on the merits. [In re Application of Kingsley, 614 F. Supp. at 225↩. Fn. ref. omitted.]
6. Rule 6(e)(3)(B) provides: (B) Any person to whom matters are disclosed under subparagraph (A)(ii) of this paragraph shall not utilize that grand jury material for any purpose other than assisting the attorney for the government in the performance of such attorney's duty to enforce federal criminal law. An attorney for the government shall promptly provide the district court, before which was impaneled the grand jury whose material has been so disclosed, with the names of the persons to whom such disclosure has been made, and shall certify that the attorney has advised such persons of their obligation of secrecy under this rule.↩
7. In Massachusetts v. Sheppard, 468 U.S. 981 (1984), and United States v. Leon, 468 U.S. 897↩ (1984), the Supreme Court held that the exclusionary remedy will be applied only when it will effectively deter official misconduct, and that good faith compliance with the warrant process will bar application of the judicially created remedy of exclusion.
8. Specifically, the District Court criticized the warrant authorizing the seizure of the contents of petitioner's home as so lacking in particularity that neither the agents nor the magistrate knew the precise limits of their authority. The District Court also faulted the agents for failing to file a verified civil forfeiture complaint at the same time that the seizure warrants were presented to the magistrate. Relying on United States v. Pappas, 613 F.2d 324 (1st Cir. 1979), the District Court concluded that "the agents could not reasonably have been justified in believing that a seizure without process can be sustained absent exigent circumstances." n9 The court also commented on petitioner's contention that the Government had violated rule 6(e) by using grand jury information in the civil forfeiture action. The court noted that although the Government's use of grand jury material in the civil forfeiture case violated rule 6(e)↩, suppression of evidence on that basis was inappropriate. The court also noted that the violation was not so extreme as to require that the indictment be dismissed.
10. Petitioner did not plead guilty to paragraphs one, two, sixteen, seventeen, and eighteen of Count Sixteen as part of the plea agreement. Under the terms of the plea agreement, petitioner would not have to forfeit his house, its contents, a lawn mower, the stamp collection, and a diamond ring. He would, however, have to forfeit currency and property worth approximately $ 250,000 that he acquired through the sale of illegal narcotics.↩
11. Sometime during the proceedings against Michael J. Kingsley, Judge Freedman became Chief Judge (hereinafter Chief Judge Freedman).↩
12. The independent source exception to the exclusionary rule allows admission of evidence that has been discovered by tainted means where the Government demonstrates that the same evidence was also discovered by means wholly independent of any constitutional violation. Silverthorne Lumber Co. v. United States, 251 U.S. 385, 392 (1920); United States v. Silvestri, 787 F.2d 736, 739-740 (1st Cir. 1986). The inevitable discovery exception permits the prosecution to demonstrate that the evidence acquired by exploitation of an illegal search would have been obtained by legal means. Nix v. Williams, 467 U.S. 431, 444 (1984); United States v. Bienvenue, 632 F.2d 910, 914↩ (1st Cir. 1980).
13. Petitioner's guilty plea, which preceded the mailing of the notice of deficiency, collaterally estops petitioner from denying the facts essential to sustain each of the 22 counts to which he pleaded guilty. Arctic Ice Cream Co. v. Commissioner, 43 T.C. 68, 74-76↩ (1964).
14. The Government's December 18, 1986, memorandum to the District Court concerning its proof of independent source provides a detailed explanation of sources of untainted evidence. In that document, the Government acknowledged that it was unable to establish through an independent source that it had knowledge of the information contained in seven cash receipts found in petitioner's briefcase. Respondent has conceded these amounts as previously noted. n15 The parties seem to focus on the admissibility of the evidence available to respondent when the jeopardy assessment was made. Although it does not affect the result in this case, we believe the proper focus for determining whether respondent's determination is arbitrary or unreasonable is on the notice of deficiency. Welch v. Helvering, 290 U.S. 111 (1933); Dellacroce v. Commissioner, 83 T.C. 269, 280↩ (1984). As is normal practice, the jeopardy assessment in this case preceded the issuance of the notice of deficiency. The jeopardy assessment also was made prior to petitioner's guilty plea, which was entered on January 9, 1987. However, the guilty plea was a matter of public record and, therefore, was available to respondent on February 3, 1987, when the notice of deficiency was issued.
16. Substantial information regarding petitioner's alleged narcotics activities was already public information prior to December 1986. Petitioner was the subject of a grand jury indictment, originally returned on November 26, 1985, that charged him with narcotics violations and income tax evasion. There had also been substantial litigation regarding the civil forfeiture. See In re Application of Kingsley, 802 F.2d 571↩ (1st Cir. 1986).
17. The fact that Mr. Baldasare's name had previously been listed as a person to whom grand jury information regarding petitioner had been disclosed, was explained by Mr. Baldasare as an administrative practice of listing certain IRS managerial personnel on the grand jury disclosure list even though they never received grand jury information. While we question the wisdom of that practice and believe it to be the potential source of controversy, we believe Mr. Baldasare's testimony that he knew nothing of what was presented to or occurred before the grand jury that investigated petitioner.↩